94                    PRINGLE *v.* ROGERS.

# Mary C. Pringle, Appellant, *v.* L. L. Rogers.

*Deeds—Improper description—Courses and distances — Monuments— Administrator's deed.*

Where there is no ambiguity in the description of land on the face of a deed, but the courses and distances are inconsistent with the monuments upon the ground, the courses and distances must yield to the monuments; and this rule applies to a deed made by an administrator in pursuance of an order of sale by the orphans' court, although the result of the application of the rule will leave unsold a portion of the land which the administrator intended to sell.

Argued April 10, 1899.   Appeal, No. 329, Jan. T., 1898, by plaintiff, from judgment of C. P. Luzerne Co., May T., 1893, No. 701, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Reversed.

Ejectment for a lot of land in the borough of Kingston. Before BENNETT, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff.   Plaintiff appealed.

*Error assigned* among others was answer to point quoted in the opinion of the Supreme Court.

*F. W. Wheaton,* of *Wheaton, Darling & Woodward,* for appellant, cited Stuven v. Kalchreuter, 8 W. N. C. 44; 4 Leading Cases in the American Law of Real Property, 367 ; Rodgers v. Olshoffsky, 110 Pa. 152; McCullough v. Wainright, 14 Pa. 171 ; Beeson v. Hutchison, 4 Watts, 443; Miles v. Diven, 6 Watts, 148; Sackett v. Twining, 18 Pa. 199; Vandever v. Baker, 13 Pa. 121.

*S. J. Strauss,* with him *William J. Trembath,* for appellee, cited Carroll v. Miner, 1 Pa. Superior Ct. 450; Scott v. Sheakly, 3 Watts, 50; Hoffman v. Danner, 14 Pa. 25; Shoemaker v. Ballard, 15 Pa. 92; White v. Luning, 93 U. S. 514.

OPINION BY MR. JUSTICE DEAN, October 6, 1899 :

Alexander J. Pringle, of Luzerne county, died in 1881, leaving a will whereby he devised a life estate in all his real and

personal property to his wife, Mary C. Pringle, this appellant, with remainder to his children. It was discovered after his death that he was largely insolvent. Abram Nesbit, having been appointed administrator with the will annexed, petitioned the orphans' court for an order to sell the testator's real estate for payment of his debts, which order was granted October 14, 1882. The petition purported to give an exact description of tracts and lots of all decedent's lands wheresoever situated. Among others was this tract, described thus :

" All that lot or piece of land situated in the borough of Kingston, Luzerne county, Pennsylvania, bounded and described as follows, to wit: Beginning at a corner of Main street in the line of land of the estate of Samuel Hoyt, deceased, thence north forty-eight and one half degrees, west forty feet, thence still along the land of the said Hoyt estate north thirty-four and one half degrees, west one hundred and twenty-five feet to a corner, thence south fifty-five and one half degrees, west sixty-three and five tenths feet to a corner, thence south thirty-nine degrees, east one hundred and nine feet, thence south forty-eight and one half degrees, east seventy-six feet to Main street, and thence along Main street north forty-one and three fourths degrees, east sixty-four feet to the place of beginning. All improved with one two-storied frame dwelling house, outbuildings and fruit trees thereon."

This piece was part only of a larger tract, and was sold at public sale on November 17, 1882, to Martha S. Schooley, for the price of $2,655 ; on report made to the court of the sale described as quoted, it was confirmed absolutely on December 10, 1882. On January 12, 1883, deed was made to the purchaser by precisely the same description as in the petition and return, which was duly recorded May 12, 1888. On March 30, 1887, Martha S. Schooley, by deed recorded March 31, 1887, conveyed the same land by the same description to L. L. Rogers, this defendant and appellee. It is conceded that the land can be located by the monuments and calls on the ground, just as described. The corner on Main street, where the line commences at the land of Samuel Hoyt, is undisputed ; also the line along the Hoyt land as adjoiner; the exact course is north forty-eight and one half degrees, west forty feet, thence still along Hoyt's land north thirty-four and one half degrees, west 120

feet to a corner. Then the next course and distance are south fifty-five and one half degrees, west sixty-three and five tenths feet to a corner; no monument at this corner is called for. The distance being run, the surveyor must then, in obedience to the course in the description, turn south thirty-nine degrees, east 109 feet; then, on running his distance, must change his course slightly to south forty-eight and one half degrees, east seventy-six feet to Main street (now Wyoming avenue). This street is a fixed monument or call, and its exact width and location are certain; therefore, the line must stop when it reaches it. This shortens the line about eight feet. The description then continues, " thence along Main street north forty-one and three fourths degrees, east sixty-four feet to the place of beginning; " the distance on this line runs out at forty-nine and five tenths feet, about fourteen feet short. Other land of decedent, immediately south of the Schooley piece, was sold on the same day on the same order, and purchased by Mary C. Pringle, plaintiff; the description of this course and distance and monuments on the ground is as precise as the first, and the monuments on the ground locate it beyond doubt. But locating both lots by the declared monuments and calls in the deeds, and as now found on the ground, leaves between them a lot or strip of land fronting about sixteen feet on Wyoming avenue, which strip is claimed by both plaintiff and defendant under the descriptions in their respective deeds, and by plaintiff, also, as devisee of a life estate under her husband's will.

At the trial, the learned judge of the court below promptly held that, on her deed, Mrs. Pringle had no case, except as to a very small piece of ground embraced in her writ; further, that if she recovered at all as to the larger lot, it must be as the life tenant of the land under the will of her deceased husband. As to defendant, he held that, whether the disputed piece was embraced by the description in her deed was a mixed question of law and fact, his view being as indicated by this excerpt from his charge:

" This claim on the part of the defendant involves the averment that the true intention of the administrator's sale, and of his deed to Martha S. Schooley, was to convey to her not only the land admitted by the plaintiff to have been thereby conveyed but also this strip, or rather these strips, now in contro-

versy. The true construction of this deed to Mrs. Schooley, under which the defendant claims, and the amount and location of the land thereby conveyed, are to be determined by you from the records pertaining to the sale, the deed made in pursuance thereof and the application of the terms of these records and of this deed to the land, the subject-matter of the conveyance, under the testimony relating to what was upon the ground at the time the conveyance was made, and certain general rules to be observed by you in that connection."

There was a verdict for plaintiff under peremptory instruction for the small strip about two feet wide, which without doubt was included in plaintiff's deed, and about which there was no real controversy; but as to the larger strip or lot, which was the real subject of dispute, the verdict was for defendant, and plaintiff now brings this appeal, assigning eight errors. Seven of them become of no consequence in view of our ruling on the first.

In their third written prayer for instruction, plaintiff's counsel asked the court to instruct the jury as follows: "That the fifth and sixth distances in the administrator's deed to Mrs. Schooley must yield to the fifth and sixth calls in said deed and the monuments respectively called for, to wit: 'The Main Road,' and 'the place of beginning,'" to which the court gave this qualified answer: "That is correct and is affirmed, provided you can by following this proposition under the evidence locate all the land intended as shown in the orphans' court records and deeds to have been conveyed, but if you cannot thus locate all the land shown in the records and deeds to have been conveyed, and in order to do so must extend the fifth and sixth distances, then you may do so, and in that event you will not be governed by the proposition contained in this point."

Was this such answer, in view of the records, writings and established and undisputed facts, as plaintiff was entitled to?

There is no ambiguity in the description on the face of the instrument; the petition, return and deed are as precise and clear as the language of the conveyancer could make them. There was, however, a latent ambiguity, according to Bacon's Maxims, as approvingly quoted by SHARSWOOD, J., in Lycoming. Mut. Insurance Co. v. Sailer, 67 Pa. 108: "Latens is that which seemeth certain and without ambiguity, for anything that

appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." Here, the parol evidence showed a mistake by somebody, when the unambiguous description was applied to the marks on the ground; in two instances, the lines were shorter than in the deed, when the monuments called for were reached; either the lines were erroneously measured or erroneously written, or the monuments called for were not at the end of the measured distance; this was a mistake collateral to the deed. Either the monument must be disregarded or the lines shortened. What should be judicial decision in such dilemma? The court below conceded that as a general rule the monuments on the ground must control the distance, but said in substance that if the jury could not locate all the lands shown by the record to have been conveyed, then they were at liberty to disregard the monuments and locate the land by the distances. This, we think, was a flat reversal of a well established rule; it put the measurement as the controlling fact, instead of a fixed, conspicuous, enduring monument on the ground. The rule is a very ancient one. As early as 1818, in Hall v. Powel, 4 S. & R. 456, DUNCAN, J., said regarding it that it had been many times settled, and "the law had ever been so held." This Court has since strictly adhered to it. Hundreds of thousands of acres of land in this commonwealth are now held because of the judicial enforcement of it; for it is a well known fact that but few of the recorded distances of the early surveys were afterwards found correct, when run between the monuments on the ground. To-day, owners of lands under deeds which have not been the subject of judicial interpretation rest secure in the conviction that their boundaries are determined by the monuments on the ground. The legal profession understand the rule to be so irrevocably settled that they do not counsel litigation in the face of it. True, in our courts, it was probably first applied in determining disputes under original surveys, and these have been the subject of its application since in the large majority of cases; but the reasons on which it was founded were just as persuasive in impelling its adoption in disputes concerning the innumerable divisions and subdivisions of land as in those resulting from original surveys. It is one to which less uncertainty is attached than to any other. It was not framed because mis-

takes occurred, only from mismeasurement of the surveyor, or carelessness of the scrivener in recording the distance, but because experience and observation had demonstrated that the surveyor or engineer was less likely to mistake by sight and record the monument at which he stopped than his measurement and computation of the distance. There is nothing in the facts of this case which takes it out of the operation of the rule. We concede that the administrator, probably, intended to sell this strip of land as part of the Schooley tract. We infer this intention, because his petition for sale averred that the sale of all the lands of decedent was necessary for payment of his debts, and because it was his duty to sell all; but it is as clear as express descriptive words and undisputed monuments can make it that he did not sell this strip to anybody. We think he ought to have sold it; the court below and the jury thought so too; they gave effect to their view of his duty by rendering judgment that he did that which he ought to have done. Neither we nor they dare tamper with a rule on which rests the security of titles, a rule which DUNCAN, J., declared had ever been the law.

Besides, the purchaser was bound to see before final confirmation of the sale that the quantity of land she thought she was buying was embraced in the boundaries of her deed, as the law fixed it by the monuments on the ground. The orphans' court, being a court of equity, would then, on complaint by her, without doubt, either have relieved her of her bargain or have enlarged the description so as to accord with her belief as to quantity. But, having accepted her deed and paid her purchase money years ago, caveat emptor must apply now, when, in effect, she sets up a deficiency in quantity as warranting her in holding possession of more land than was conveyed to her: Sackett v. Twining, 18 Pa. 199.

We agree entirely with the argument of counsel for appellee that where the record of writings constituting a conveyance, when taken altogether, on their face, show an ambiguity in the description, evidence aliunde may be resorted to to determine what was intended to be embraced in the deed, and all the authorities cited by them sustain the argument; but there is no decision of this Court that ever countenanced a disregard of the unmistakable monuments on the ground to carry out a conjec-

tural intention of the parties to convey more land than that embraced in the description; and this intention to be found in great part, too, by a jury from records and written documents.

As the case stood when given to the jury, plaintiff's third point should have been affirmed without qualification, and the jury should have been instructed to render a verdict for plaintiff. Therefore, the judgment of the court below is reversed, and a v. f. d. n. is awarded.