Argued July 27; affirmed September 14; rehearing denied
October 18, 1932

## SHAFER ET UX. *v.* EKSTRAND ET UX.

(14 P. (2d) 287)

See 27 R. C. L. 375.

*T. J. Cleeton* of Portland (Albert H. Tanner and Clarence A. Beckman, both of Portland, on the brief), for appellants.

*F. M. Phelps,* of Portland (Phelps & Burdick, of Portland, on the brief), for respondents.

KELLY, J. After alleging in their complaint that plaintiffs are married to each other and defendants are also married to each other, plaintiffs further allege:

"That on or about the 23d day of June, 1928, plaintiffs did purchase from defendants a certain tract of land, described as follows:

"That portion of the Moses W. Noble D. L. C. in section 30, township 1, south range 3 east of the Willamette Meridian, in Clackamas County, Oregon, described as follows, to-wit:

"Beginning at the northeast corner of said donation land claim, and running thence south along the east line of said claim 501.2 feet; thence west, parallel with the north line of said claim 586.92 feet, more or less, to the present established easterly line of 'Foster Road'; thence northerly and northwesterly along said easterly line of Foster Road to its intersection with the north line of said Donation Land Claim; thence east along said north line of said claim 806.47 feet, more or less, to the place of beginning, containing 7.89 acres, more or less.

"And that prior to the purchasing of said land, the defendants did take the plaintiffs upon the same, and did exhibit said land to plaintiffs and did state to plaintiffs that the south line of the land plaintiffs were purchasing was even with a cherry tree, which the defendants pointed out to plaintiffs, and that the plaintiffs did purchase said land for the sum of $16,500, relying upon the representations of the defendants that the south line of said premises extended to a point even with said cherry tree and that defendants did thereupon cause a deed to be prepared and did exhibit said deed to the plaintiffs and did at said time falsely and fraudulently and with the intention of cheating and defrauding the plaintiffs, state that the land as described in said deed extended to a point even with said cherry tree and the plaintiffs did upon said false and fraudulent representations made for the purpose of cheating and defrauding plaintiffs, which said false and fraudulent representations were known at said time by the defendants, pay to the defendants the purchase price of said premises and did go thereupon and farm the same, believing the south line of said premises extended to a point even with said cherry tree, and that plaintiff did believe that they were the owners of said land up and unto the first day of November, 1928, at which time the defendants did order

the plaintiff off the land opposit said cherry tree, and that the plaintiffs did make an investigation and cause a survey to be made and did thereafter discover that the true fact was that .the said defendants had not. conveyed to plaintiffs the property extending to and being upon the line of said cherry tree, but had conveyed to plaintiffs, 7.89 acres, being 1½ acres short of said amount sufficient to extend said line of said premises to said cherry tree, as aforesaid, and that the said acre and one-half of land was reasonably worth the sum of $1,000.00, and that the difference between value of the land that defendants represented that plaintiffs would receive as aforesaid and the land which plaintiffs did receive was $1,000.00, and that the plaintiffs did rely upon the statements of defendants, as aforesaid, and did believe them to be true and did believe at the time said deed was delivered to plaintiffs, and up and unto the 1st day of November, 1928, that they had purchased said land and the same was conveyed to said plaintiffs, and that plaintiffs have been damaged thereby by the false and fraudulent representations, as aforesaid, in the sum of $1,000.00.''

No demurrer to this complaint was filed, but in the last brief filed by defendants in this court, defendants contend that ''plaintiffs failed in stating in their complaint a cause of fraud.'' The defendants invoke the well-known doctrine announced in the case of *Wheelwright v. Vanderbilt,* 69 Or. 326 (138 P. 857), wherein this court, speaking through Mr. Justice (now Chief Justice) BEAN said:

''To constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.''

■ We find in the foregoing quotation from plaintiffs' complaint the statement that "defendant * * * did state to plaintiffs that the south line of land plaintiffs were purchasing was even with a cherry tree which the defendants pointed out to plaintiffs." That is an allegation of a material representation.

■ We also find the following averment: "Plaintiffs * * * did thereafter discover that the true fact was that the said defendants had not conveyed to plaintiffs the property extending to and being upon the line of said cherry tree, but had conveyed to plaintiffs 7.89 acres being 1½ acres short of said amount sufficient to extend said line of said premises to said cherry tree as aforesaid." This is an allegation of fact showing that said representation was false, and the nature of its falsity.

■ We also find this clause in plaintiffs' complaint, "which said false and fraudulent representations were known at said time by the defendants." After issue joined, this suffices, as an allegation, that when the representation was made defendants knew that it was false. On this phase of the case, we find in defendants' answer the allegation that "the defendants before said deed was made to plaintiffs, pointed out to them the said south line to be where said fence was located and where the stakes had been set by said surveyor."

When it is borne in mind that the point at issue is whether defendants represented to plaintiffs that the south line of the premises in suit was even with the cherry tree, or that it ran even with the fence in question, this allegation in the answer constituted an aider to plaintiffs' complaint, if one is needed, clearly disclosing that, if defendants made the representation alleged in the complaint, such representation was false and defendants knew it to be false.

■ We find in plaintiffs' complaint this clause, "and the plaintiffs did upon said false and fraudulent representations made for the purpose of cheating and defrauding plaintiff, * * * pay," etc. After issue joined this suffices as an allegation of an intent on defendants' part that the alleged misrepresentation should be acted upon by plaintiffs.

And finally, the allegation in said complaint, that plaintiffs acted in reliance upon said alleged misrepresentation, is in the following language: "And that the plaintiffs did rely upon the statements of defendants as aforesaid, and did believe them to be true * * * and that plaintiffs have been damaged thereby by the false and fraudulent representations as aforesaid in the sum of $1,000."

■ Without repeating the testimony, which would unnecessarily extend this opinion, we hold that there is substantial testimony upon each of the phases of fraud above outlined in support of plaintiffs' allegations. This testimony is contradicted by defendants. There being this conflict of evidence, the judgment of the jury is conclusive upon the question as to which party should prevail.

■■ Plaintiffs were in possession of the disputed tract from the time of their purchase until sometime in July, 1929. Plaintiffs claim there was an agreement that they should have possession to a culvert farther south than the cherry tree. Defendants claim that this privilege embraced all the property south of the south boundary line described in the deed and extending to said culvert. In the fall of that year, defendants built a fence upon the line which defendants claim to be the true south line. Plaintiffs testify that until the erection of that fence, they believed that the south line was at the cherry tree. The complaint was filed on October

24, 1930. The action, therefore, was instituted within two years from the discovery of the alleged fraud. For that reason we cannot concur with defendants' argument that plaintiffs ought not to be permitted to maintain this action because a reasonable time within which to institute this action had elapsed before the case was brought. Neither can we agree with defendants that misrepresentation amounting to fraud is merged in a deed subsequently accepted by the grantees therein in reliance upon such misrepresentation. The fraud thus practiced affords the basis of an action in deceit for such damages as the grantees may have suffered.

*Interior Warehouse Co. v. Dunn,* 80 Or. 528 (157 P. 806), cited by defendants upon this point, is a case wherein this court held that "the answer does not contain sufficient facts to * * * justify a conclusion of fraud on the part of the plaintiff."

*Holcomb v. Mooney,* 13 Or. 503 (11 P. 274), also cited by defendants, is one where fraud was not alleged, but it was claimed that a mistake had been made in the description.

*Lovell v. Potts,* 112 Or. 538 (207 P. 1006, 226 P. 1111), holds that where a form of a written contract containing provisions not agreed to had been submitted by plaintiff and defendants had refused to sign the same, defendants were put upon their guard in the matter of signing any writing submitted by plaintiffs without first reading it; and, hence, could not avoid the obligations of a later contract with plaintiffs on the ground that it did not contain the provisions agreed upon, and that defendants had signed it without reading it. The character of the contract in the case just mentioned was such that a reading of it would have

apprised defendants of its terms with respect to the disputed provisions. A reading of the deed in the case at bar does not disclose whether the southern boundary line extends to the cherry tree or not.

*Winn v. Taylor,* 98 Or. 556 (190 P. 342, 194 P. 857), also cited by defendants, announces the familiar rule that,—

"Any inconsistencies between the terms of a contract of purchase of real estate and the terms of the deed are governed by the latter, into which the former are merged."

In this case nothing is said about a fraudulent representation.

The prevailing opinion in *Upton, Assignee, v. Tribilcock,* 91 U. S. 45 (23 L. Ed. 203), also cited by defendants, treats a representation, that a purchaser of stock in a corporation is liable only for the payment of 20 per cent of its par value and the remaining 80 per cent thereof is nonassessable, as a representation of law and not of fact, and hence, it could not be made the basis of a defense founded upon alleged deceit. No one would suggest that the alleged representation in the case at bar to the effect that the southern boundary line of the premises in suit extended to the cherry tree is merely a representation of law and not one of fact.

*Andrus v. St. Louis Smelting & Refining Company,* 130 U. S. 643 (9 S. Ct. 645, 32 L. Ed. 1054), also cited by defendants, announces the rule relied on by plaintiffs, thus:

"False and fraudulent representations upon the sale of real property may undoubtedly be ground for an action for damages when the representations relate to some matter collateral to the title of the property, and the right of possession which follows its acquisition, such as the location, quantity, quality and condition of the land."

In that case, however, the ruling of the trial court sustaining a demurrer to the complaint was upheld and as one of the reasons therefor the United States Supreme Court said:

"But where the vendor, holding in good faith under an instrument purporting to transfer the premises to him, or under a judicial determination of a claim to them in his favor, executes a conveyance to the purchaser, with a warranty of title and a covenant for peaceable possession, his previous representations as to the validity of his title, or the right of possession which it gives, are regarded, however highly colored, as mere expressions of confidence in his title, and are merged in the warranty and covenant, which determine the extent of his liability."

*Griffith v. Kempshall,* Clarke's Ch. Rep., p. 576, is a case which announces the same rule. There, at an auction sale thereof, defendants represented that their lands were free from incumbrance and that a clear and unincumbered title should be given for the lands so purchased. The court distinguished the representation thus made from one which, if fraudulently made, would vitiate a contract induced by it; and sustained a demurrer to the complaint. No question of fraud appears in *Pringle v. Rogers,* 193 Pa. 94 (44 Atl. 275). *Gunby v. Sluter,* 44 Md. 237, deals with representations as to title which the court holds were merged in the deed.

Section 850a, Devlin on Real Estate (3d Ed.), cited by defendants, recognizes the principle that only in the absence of fraud or mistake is the acceptance of the deed considered the consummation of the contract between the parties.

We are confronted with the question whether, if defendants represented that the south boundary line extended to the cherry tree and while on the premises pointed out such line to the plaintiffs, such course

would constitute a representation of a material fact, which, if fraudulently made, may be made the basis of this action. Defendants cite two cases in support of their negative argument on this point, wherein boundary lines were shown that were not those which the descriptions in the deeds disclosed to be the true boundary lines. One of these is the case of *Gatlin v. Harrell,* 108 N. C. 485 (13 S. E. 190). There a nonsuit was ordered by the trial court. In affirming the judgment, the Supreme Court say:

"The whole of the evidence accepted as true did not in any reasonable view of it prove the alleged fraud and deceit. The proof was that the defendants pointed out to the plaintiff certain corners and linetrees and lines of the tract so sold, and that these or some of them were not the true ones; but there is nothing to prove that defendants knew that they were not true ones, nor that they fraudulently intended to mislead, deceive and get advantage of the feme, plaintiff."

In the case at bar, defendants' testimony to the effect that the south boundary line was at the fence and not at the cherry tree and was so declared, known and understood at all times during the negotiations between plaintiffs and defendants forecloses any question as to the knowledge on defendants' part of the falsity of a statement that such line extended to the cherry tree.

The other case cited by defendants, wherein boundary lines were falsely represented, is *Lytle v. Bird,* 48 N. C. 222. Plaintiffs very commendably call our attention to the fact that this case has been expressly overruled. *Walsh v. Hall,* 66 N. C. 233; *May v. Loomis,* 140 N. C. 350 (52 S. E. 728). In the last case here cited, the Supreme Court of North Carolina say that since the case of *Walsh v. Hall,* supra, the case of *Lytle v. Bird,* supra, has been ignored as authority.

In the case of *Conta v. Corgiat,* 74 Wash. 28 (132 P. 746), cited by defendant, there was no pointing out of false lines.

The case of *MacKay v. Peterson,* 122 Wash. 550 (211 P. 716), is one wherein a representation to the effect that there were 16 acres in cultivation, or cleared, when in fact there were but 9.86 acres in the cleared area was held insufficient upon which to base an action of deceit, where the purchaser had gone upon the land for the purpose of inspection and had had every opportunity to satisfy himself as to the facts in any way he might choose.

The Washington Supreme Court, speaking through Mr. Justice Tolman, say:

"There was nothing in the situation which would tend to prevent one so desiring from satisfying himself, either by estimating the extent of the area, or, if unwilling to trust his judgment of distances, by stepping them off, as respondent MacKay says he afterwards did, and thereby first learned that he had been deceived."

In the case at bar, plaintiffs testify that they made no independent investigation, and when one of the plaintiffs was informed by one of the defendants that a survey had been made and it had been ascertained that there were but 7.8 acres in the tract, such plaintiff expressed his assent, provided the south line extended to the cherry tree. This negatives any reliance by plaintiffs in the case at bar upon anything other than defendants' alleged representation that the south line extended to the cherry tree.

The doctrine of the case of *Freeman v. Evans,* 159 Fed. 26 (86 C. C. A. 216), cited by defendants, is that opportunities for investigation, and inquiry open to an attorney representing a party and of which such at-

torney was bound to avail himself, were such party's opportunities as well, and that the exaggerated statements, as to the value of property to be exchanged, offer no basis for a charge of deceit. These principles, while sound, are not involved in the case at bar.

The case of *Allinder v. Bessemer C. I. & L. Co.,* 164 Ala. 275 (51 So. 234), cited by defendants, is one wherein plaintiff purchased two vacant lots shown and designated only by defendants' map and plot of the town of Bessemer. At the time of the sale, there were no monuments or boundaries locating the streets or alleys of the townsite, nor any monuments or other physical evidences of the location of the boundary lines of the lots whatever. After the purchase of the lots, but before the deed was made, an agent of the defendant undertook to locate the streets which bounded plaintiff's lots and also to locate the two lots and the boundary line between the two. Plaintiff did not require a location or actual survey before she purchased, but purchased from the location made by the map alone. There was no attempt to actually locate the lots and to point out the boundaries until after the sale. The court held that under this state of the record no liability attached as to the mistake in locating the boundary lines as against the vendor. The court also held that there was nothing in the record to show that the first survey, as above mentioned, was erroneous.

█ █ We hold that a positive statement by the vendor to the vendee, that the boundary line of a tract of land extends to a certain permanently located physical object, which object is thereupon pointed out to the vendee, is a statement of fact and that a jury might properly find that the vendee acting reasonably had a right to rely upon it. In determining whether the vendee had a right to rely upon such a statement, the

jury should be guided by a consideration of whether an ordinarily prudent person in the vendee's place would have relied thereupon.

It is urged by defendants that plaintiffs were given such notice by information that the premises had been surveyed, by delivery of the abstract and by the description set out in the deed. The distinction between the case at bar and the case of *Shappirio v. Goldberg,* 192 U. S. 232, 241 (24 S. Ct. 259, 48 L. Ed. 419), is that in the latter case the description in the deed disclosed the omission therefrom of the disputed part of the property, while in the case at bar neither the abstract nor the deed referred to the cherry tree or gave any indication as to its location in reference to any boundary line.

*Clark v. Reeder,* 158 U. S. 505 (15 S. Ct. 849, 39 L. Ed. 1070), cited by defendants, is a case wherein the court held that the evidence was insufficient to show any fraudulent misrepresentation or concealment on the part of the vendor's agent. Both parties were aware of an overlap of different surveys, but neither was aware of the extent of it. The statement of vendor's agent to the effect that such interference was but small, was not shown to have been known to be false by the one making it or by his principal. The one to whom it was made and whose advice controlled the vendee, he being the vendee's attorney, deemed the claim based upon the overlapping survey as invalid, and hence, reliance upon the representation, or upon the alleged concealment of the actual extent of the overlap, was not shown.

In *Ziegler v. Stinson et al.,* 111 Or. 243 (224 P. 641) ; *Slaughter's Administrator v. Gerson,* 13 Wall (U. S.) 379 (20 L. Ed. 627), and *Farnsworth v. Duffner,* 142 U. S. 43 (12 S. Ct. 164, 35 L. Ed. 931), there were independent investigations upon which the vendees were held to

have relied. *Freeman v. Evans,* 159 Fed. 26 (86 C. C. A. 216), holds that opportunity of the attorney for plaintiff to investigate matters of title and statements made by defendants were in law those of plaintiff and that, because of the investigation of said attorney and his opportunity to make further investigation, no recovery should be had.

Defendants also cite sections 892 and 893 of Vol. 2, Pomeroy's Equity Jurisprudence (3d Ed.). Section 892, so cited, declares that in the following three cases a party is *not* justified in relying upon representation:

"1. When, before entering into the contract or other transaction, *he actually resorts to the proper means* of ascertaining the truth and verifying the statement; 2. When, having the opportunity of making such examination, he is charged with the knowledge which he necessarily would have obtained if he had prosecuted it with diligence; 3. When the representation is concerning generalities equally within the knowledge or the means of acquiring knowledge possessed by both parties."

And that in the following case a party *is* justified in relying upon representation:

"When the representation is concerning facts of which the party making it has, or is supposed to have, knowledge, and the other party has no such advantage, *and the circumstances are not those described in the first or the second case.*"

Section 893, ibid, elucidates the first two cases mentioned in the foregoing summary in the following manner:

"If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the mis-

representation and to have been misled by it. Such claim would simply be untrue. The same result must follow when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled.''

In the case at bar, the record is such that the jury could and evidently did, find that plaintiffs did not make any independent investigation, nor commence, or purport or profess to commence an investigation. The evidence can be construed in such a way as to justify plaintiffs, as reasonably prudent purchasers, in not attempting any investigation.

Taking the view that, while owning and in possession of about 19 acres of land, defendants pointed to a cherry tree approximately midway between the north and south boundary lines of such 19-acre tract and informed plaintiffs that they would sell plaintiffs a part of such land of which parcel, so to be sold, the southern boundary line would extend to said cherry tree and that the survey, which was made, could reasonably be deemed to have been for the purpose only of securing a description by metes and bounds of the tract thus pointed out, it could be deduced that no other or different consideration would have been given by a reasonably prudent purchaser to the result of said survey than that the description thus obtained conformed to the representation so made.

If plaintiffs' testimony is true, defendants should have directed the surveyor to run his lines in such a

way as to extend the southern boundary to the cherry tree. This is not a case where, from a consideration of a given written description, it was difficult or impossible to locate the southern boundary line. According to plaintiffs' contention, it is a case where the southern boundary line was definitely designated by the vendors and a survey was had, ostensibly to secure a written description conformable to that designation.

11. We are not unmindful that defendants emphatically deny having said that the boundary line in question was at the cherry tree, or that the survey was intended at any time to locate it there; but where there is a conflict in the testimony the prevailing party cannot be deprived of the effect of a verdict in his favor, if there is any evidence in his behalf upon the material issues.

We find nothing in the testimony which warrants us in holding that the surveyor, who made the survey from which the description in the deed was procured, became the agent of plaintiffs. It is true that one of the plaintiffs gave the surveyor's name to defendants, but neither of the plaintiffs employed the surveyor or had any dealings with him with reference to this transaction.

12. A point is sought to be made by defendants because of the allegation in plaintiffs' complaint, "that defendants did thereupon cause a deed to be prepared and did *at said time* falsely and fraudulently" make the alleged misrepresentation as to the boundary line. It is urged that this is not an allegation of misrepresentation by silence, and there is no testimony tending to show that any such representation was made vocally when the deed was prepared and exhibited. The complaint also alleges the making of the alleged misrepresentation prior to the purchase, reliance thereupon

and the purchase at the price named. The allegation that said misrepresentation was made when the deed was prepared and exhibited may be treated as surplusage. When this allegation is so treated, the complaint still states a cause of action.

13. Defendants argue that, if we uphold plaintiffs' right to recover damages suffered on account of defendants' fraudulent representations, we will vary the terms of the written deed by oral declarations. In this action, the plaintiffs do not seek to vary, alter, reform or modify their deed. The judgment they have obtained in the trial court does not change any of the terms of that instrument. In saying this, we disclaim any intention of holding that a purchaser, who, by fraudulent representations of the vendor, as to the quantity of land conveyed, has been induced to accept a deed which conveys a materially less quantity of land than so represented, has no right to rescind and recover the amount paid. We simply note that the case at bar is not a suit to rescind nor one to reform a deed; and that for this reason the rule that parol evidence cannot vary the terms of a writing has no application. With equal propriety in a suit to rescind or reform, we might hold that parol evidence of such fraud, as will vitiate a written contract, is not within the rule rendering parol evidence inadmissible to vary the terms thereof.

Defendants well say that fraud in the execution of a contract does not mean fraud or misrepresentation prior to the execution of the instrument. As said by the late Mr. Justice EAKIN in the case *Turner v. Bray,* 72 Or. 334 (143 P. 1011): "There are two kinds of fraud of which the court takes cognizance: Fraud in consideration and fraud in the execution of the instrument." *Olston v. Oregon Water Power & Ry. Co.,* 52 Or. 343 (96 P. 1095, 97 P. 538, 20 L. R. A. (N. S.) 915).

The instruction requested by defendants which was refused and which refusal constitutes defendants' third assignment of error was substantially given. The instruction requested by defendants and refused by the court constituting defendants' fourth assignment of error failed to take into account the alleged misrepresentation by defendants and for that reason no error was committed by the learned trial judge in refusing to give it as requested.

14. Error is assigned because of the modification of the requested instruction last mentioned on the ground that plaintiffs were not entitled to recover unless they could show fraud in the execution of the deed. This ground is untenable. *Olston v. Oregon Water Power & Ry. Co.,* supra.

"It is said to be well settled that when a contract is consummated by which an injury is done, whatever fraudulent representations may have been employed by a party to the contract as a means of inducing it to be made, cannot be excluded by invoking the aid of the statute."

"Where * * * the representations are made concerning some collateral matter, not ordinarily to be included in the deed, but so materially connected with the subject matter of the contract as to be one of the controlling influences operating to induce the vendee to make the contract, and without which he would not have made it, although such representations may be in reference to a matter within the statute of frauds, the vendor will be liable for damages to his vendee." Judge Robert S. Bean in *Foss v. Newbury,* 20 Or. 257, 261 (25 P. 669).

We find no reversible error and therefore the judgment of the circuit court is affirmed.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.