Argued September 22; modified November 9; rehearing denied
December 12, 1933

# BEVAN *v.* TEMPLEMAN ET AL.
### (26 P. (2d) 775)

*Joseph H. Page,* of Portland, for appellant Andrew P. Templeman.

*Robert C. Bradshaw,* of Portland (Joseph, Haney & Veatch, of Portland, on the brief), for appellant Jerome B. Steinbach.

*MacCormac Snow,* of Portland, for respondent.

CAMPBELL, J.  Plaintiff was the operator of the Eaton hotel in Portland, Oregon, owning the furniture and furnishings thereof with a lease on the premises thereon for four years, all of which she desired to dispose of.

Defendant Jerome B. Steinbach, a duly authorized and qualified real estate agent, was agent of the Steinbach Estate Company, the owner of the building in which the Eaton hotel was located.

Defendants J. C. Talbott and Margaret F. Talbott were the operators of the Arcadia hotel in Portland which they were ready and willing to sell or trade for the Eaton hotel on such terms as would be mutually agreed upon between the respective operators.

Defendant Andrew Templeman was a duly authorized and qualified real estate agent, engaged in dealing in real estate and business chances.

The plaintiff alleges that on June 25, 1930, she was induced through fraudulent representations to transfer her interest in the Eaton hotel to defendant Margaret Talbott; that defendants J. C. Talbott, Margaret Talbott, Steinbach and Templeman, falsely represented to her that Mr. and Mrs. Talbott were the owners of all the furniture and furnishings of the Hotel Arcadia; that such furniture and furnishings were paid for and free from all encumbrances, and further

alleged the usual allegations in an action for such deceit.

In her complaint, plaintiff joined as defendants, the respective surety companies who were the bondsmen of the respective real estate dealers.

After issue joined a question was raised by defendants as to whether the cause should be tried against all the defendants at the one hearing, and in order to avoid any difficulty, arising out of that contention, plaintiff took a voluntary nonsuit against the defendants Talbott. Thereupon the remaining defendants joined in a motion to compel plaintiff to elect as to whether she would proceed on the theory that her cause of action was founded on contract or in tort. This motion was heard before the matter came on for trial. The court took it under advisement and ordered the trial to proceed. After the jury had been empanelled and before any testimony had been received, the court granted the motion and required the plaintiff to elect. Thereupon plaintiff elected to proceed in tort against defendants Templeman and Steinbach, and took a voluntary nonsuit as to the other defendants. Thereupon defendants Templeman and Steinbach moved the court to discharge the jury and to compel plaintiff to file an amended complaint and to omit therefrom any reference to the fact that Templeman or Steinbach were bonded. This, the court refused.

Defendants plead, in their answer, the execution of a release by plaintiff of all liability on the part of defendant Templeman, "from any and all claim which might arise over said sale or transfers of any property whatsoever".

Plaintiff, in her reply to the allegation of the release, alleged that defendant Templeman secured her

signature to said release by falsely representing to her that:

"It was to act as a minute or memorandum of the facts (which in truth, were facts) that the plaintiff had examined the furniture and furnishings in said Arcadia Hotel and did not enter into the said transaction of June 25, 1930, upon the basis of any representation by the said Andrew P. Templeman or anybody else as to the quantity, quality or condition of the said furniture and furnishings, and that the plaintiff knew and recognized that any lease with the said M. F. Talbott may have held to said premises, was in default for the non-payment of rental hereinbefore referred to."

She then further alleges that she received no consideration for executing said release and that she relied as to the purport of the contents of the said release on the statements made by said Templeman as to the meaning it was intended to convey.

Defendants separately and seasonably moved for nonsuits and directed verdicts. Said motions were denied. The court withdrew from the jury all allegations of misrepresentations except the one of the ownership of the furniture and furnishings of the Arcadia hotel and the cause was then submitted to the jury who returned a verdict in favor of plaintiff and against both of said defendants and judgment was entered thereon from which each defendant takes a separate appeal.

1. This assignment of error is based on the refusal of the court to grant a nonsuit and also to direct a verdict in favor of defendants. We will first consider these motions of defendant Templeman.

These were made on the ground that there was no evidence that defendant Templeman or defendant Steinbach represented to plaintiff that defendants Tal-

.bott were the owners of the furniture and furnishings of the Arcadia hotel.

There is evidence tending to show that Templeman introduced the defendants Talbott to the plaintiff as the owners of the Arcadia hotel. This was done to enable the respective parties to negotiate with each other regarding the terms on which they would exchange properties. Templeman was acting as agent for plaintiff and also for defendants Talbott occupying a confidential relationship to each. It was therefore incumbent upon him to make a full and truthful disclosure of all facts coming to his knowledge or that he, by reasonable diligence, could discover, likely to affect the interest of either of his clients and the fact that he was agent for both parties did not release him of this responsibility and duty. *Burgess v. Wing Agency,* 139 Or. 614 (11 P. (2d) 811); *Koehler v. Dennison,* 72 Or. 362 (143 P. 649); *Phipps v. Willis,* 53 Or. 190 (96 P. 866, 99 P. 935, 18 Ann. Cas. 119.)

The law is well settled in this state that to sustain an action for fraud or deceit based on fraudulent representations, it must appear:

"(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." Wheelwright v. Vanderbilt, 69 Or. 326 (138 P. 857); Shafer v. Ekstrand, 140 Or. 582 (14 P. (2d) 287); Blair v. McCool, 136 Or. 139 (295 P. 950, 298 P. 244).

It will be observed that plaintiff was not dealing with defendant Templeman "at arm's length", but was dealing with him as her paid agent. There was

some competent evidence tending to show each element of fraud and it became a question for the jury to determine under all the facts and circumstances in the case whether the fraud alleged had been established by a preponderance of the evidence.

■ 2. This assignment of error is based on the court permitting plaintiff to testify that she had no knowledge of the contents of the release contrary to the allegations in her reply.

Plaintiff does not admit in her reply that she knew the contents of the release but alleges that what defendant Templeman led her to believe was the meaning and purpose of what the release contained was entirely different from what he now contends is its meaning and purport.

The release was not executed until the transaction, transferring the property, had been completed, and the bills of sale by the respective parties had been delivered. There was no consideration for the release nor does it recite that it was made for value. It does not rise to the dignity of a contract as between the parties signing it and defendant Templeman. This defendant paid nothing for it. Its execution was not a detriment to him. At most, it could only be considered as an admission on the part of plaintiff and would be subject to explanation by either of the parties thereto.

The release is signed by the Talbotts and plaintiff. It, in effect, recites that plaintiff gave a bill of sale to the defendants Talbott, of the furniture of the Eaton hotel and that defendants Talbott gave a bill of sale to plaintiff of the furniture of the Arcadia hotel; that neither made an inventory of the furniture of the respective hotels, but used an old one which each believed was substantially correct and were willing to accept without checking and that they were

willing to release their agent, Templeman, from liability from shortage or errors.

It further recites:

"* * * that E. H. Collins, agent for the landlord of the Arcadia Hotel, has raised some question as to whether the landlord of said premises has a claim against said furniture and furnishings for any rent on said premises past due and unpaid, and that said Bessie Bevan has made a personal investigation of said matter and does hereby release said Andrew P. Templeman from any claim of damage, if any there should be, if it should be held that there was any rent past due and unpaid on said premises, or any claim against said furniture and furnishings for same, and each party hereto admits that they have made a full and free investigation of the property by them purchasing, and do each release said Andrew P. Templeman from any and all claim which might arise over said sale or transfers of any property whatsoever."

The testimony was not a departure from the pleadings. Its consistency with the admission made in the release was a circumstance to be considered by the jury in determining the weight to be given to plaintiff's testimony.

3. This assignment is based on the court instructing the jury that defendant Margaret Talbott did not own the furniture and furnishings in the Arcadia hotel on June 25, 1930, the time she executed the bill of sale to plaintiff, or at any time prior thereto.

The undisputed evidence discloses that, in the year 1925, F. S. Ballin was the owner of the building in which the Arcadia hotel is located. He was also the owner of the furniture which he procured through foreclosure proceedings. During that year, he leased the hotel and furniture to a Mr. Clark and agreed to give Mr. Clark a bill of sale to the furniture when he

would comply with certain conditions and pay the sum of $1,300. The bill of sale was put in escrow to be delivered when the $1,300 would be paid and on compliance with the other conditions of the lease. It was never delivered.

In the year 1927, J. C. Talbott, through mesne transfers and assignments, succeeded to the rights of Clark and became the lessee under the lease. Talbott fell behind in the payment of his rent and on September 26, 1927, after notice to quit, surrendered possession of the premises, "together with all the furniture, furnishings, fixtures and other personal property belonging to said hotel and lobby". Immediately thereafter, F. S. Ballin entered into a contract with Margaret F. Talbott consenting to an assignment and modification of the lease from J. C. Talbott to Margaret F. Talbott on the condition of the payment by Margaret F. Talbott to him of $1,100 and $550 per month rental for six months and contained the further provision:

"If you have not sold the hotel within six months to a tenant and upon terms satisfactory to me, then we will enter into a new lease satisfactory to both of us, but based upon the earning capacity of the hotel."

Defendant contends that the above quoted clause is tantamount to an acknowledgment on the part of F. C. Ballin that Margaret F. Talbott was the owner of the hotel.

This contention is not tenable. There is nothing in any of the numerous assignments or transfers of the lease wherein any of the lessees, so assigning, make any claim to the ownership of the furniture. The uncontradicted documentary evidence clearly shows that F. C. Ballin, all the time from 1925 up to and including

the time the transfer was made to plaintiff, was the owner of the furniture and the court did not err in so instructing the jury.

4. This assignment of error is based on the court's action in striking out the answer of the witness J. C. Talbott to the question, in substance, whether or not the amount of rental he had paid Mr. Ballin for the period of time beginning six months after the assignment of the lease to Mrs. Talbott to the date of sale to Mrs. Bevan, was the full earning capacity of the hotel.

The theory upon which the defendant was introducing this testimony was that the contract between F. C. Ballin and M. F. Talbott contained a promise on the part of Ballin to enter into a lease mutually satisfactory, based on the earning capacity of the hotel.

Under this agreement, it was not in the power of either the lessor or the lessee to determine what the conditions were that would be satisfactory to both parties. It left certain matters to be determined later. It is too indefinite in itself to constitute a contract to lease. It fixes no length of term nor the rental reserved. It does say "on terms satisfactory to both of us". This means that the lessor and the lessee at some future time should agree on the terms of the lease before it should be made. It amounts to no more than the lessor saying that at the present time he would consider the lessee a satisfactory tenant provided they could agree on terms. No new lease had been entered into. "To be binding, the agreement must be certain as to the terms of a future lease." 16 R. C. L. 557. It is elementary that the essential elements of a lease should be definite and certain. *H. S. & D. Investment Co. v. McCool,* 139 Or. 266 (9 P. (2d) 809). "Here no provision was fixed in the contract, except such

rental value as the parties might agree upon. They might never agree so the case falls squarely within the general rule announced above and the contract is too uncertain and indefinite to be enforced." *Keating v. Michael,* 154 Ark. 267 (242 S. W. 563). The necessary elements of a lease are, description of the property, length of term and rental consideration. *Bingham v. Honeyman,* 32 Or. 129 (51 P. 735, 52 P. 755); *Noyes v. Stauff,* 5 Or. 455.

The witness may have been qualified to testify as to the rental value of the premises, but that testimony would not establish that he or Mrs. Talbott were the owners of the personal property in question.

5. This assignment of error is based on the court's refusal to allow J. C. Talbott to testify as to the honesty of his intentions in the transaction.

It is immaterial, so far as the case at bar is concerned, what his intentions were in transferring the property, as he was no longer a party to the action.

6. In this assignment, the appellant complains that the court, before the trial began, failed to require plaintiff to elect as to whether she was relying for her cause of action on contract or in tort.

The court granted the motion of defendant before any evidence was introduced so that defendant could not have been injured. We are not passing on the question as to whether or not the court's ruling was correct, nor do we wish to be understood as approving or disapproving the procedure adopted by the court at the request of the parties.

7. This assignment of error is based on the refusal of the court to discharge the jury and declare a mistrial, when the cause was dismissed as to the sureties on the bonds of defendants Templeman and Steinbach.

This was not error. The law requires every one engaged in the business of real estate broker in this state to file a bond for the protection of those with whom he deals. Oregon Code 1930, § 63-720. The filing of such a bond is a public matter. The record is open to any one who wishes to inspect it. Every one is presumed to know the law. The authorities cited by counsel have reference only to such cases wherein the law did not compel the defendant to be protected by insurance against the claim sued on for the benefit of the party injured, and are not applicable to the facts in the instant case.

The case of defendant Steinbach presents an entirely different question. Steinbach was not plaintiff's agent. No fiduciary relation existed between him and the plaintiff. There is no reason why plaintiff should have relied on any statement made by Steinbach.

Plaintiff testified in regard to representations made by Steinbach, as follows:

"Q. All right, what did Mr. Steinbach say during that period?

A. Well, he called me up very frequently and he said 'why don't you make that deal with Mr. Templeman for that Arcadia Hotel?' Do you want me to tell all of it?

Q. Yes.

A. Mr. Templeman would call me and say 'are you going to make that deal with the Talbotts?' and I would say 'no, I don't want it', and it wouldn't be half an hour sometimes until Mr. Steinbach would call me up and he would be so mad that he could hardly talk to me, and he says 'I want you to make that deal, my mother needs that money and we have got to have something done.'

Q. What, if anything, did Mr. Steinbach say about his investigation of the deal?

MR. BRADSHAW: Quite leading.

A. He said that he had looked up Mr. Talbott and found him a very reliable man.

Q. What, if anything, did Steinbach say about Talbott's interest in the Arcadia Hotel, the ownership of the hotel?

A. I said that I didn't want the Arcadia Hotel, Mr. Steinbach says 'I think you will be much better off over there than what you are with this place, and you will probably find it better than you think it is.'

Q. During these talks with Mr. Steinbach in the last three weeks before the deal was made did he name the Talbotts by name.

A. Yes sir.

Q. Once or twice or often?

A. Most every time I talked to him that was sometimes every day.

Q. Where would these talks take place, on the telephone or in person?

A. Most always in the hotel office in the Eaton Hotel.

Q. During this period that we are talking about, Mrs. Bevan, confine your remarks at the present to the period say three weeks before this trade was made, which would be practically during the month of June, say.

A. Yes.

Q. 1930?

A. Yes.

Q. How often did he come to the Eaton Hotel office during that time?

A. I think every day and sometimes after dinner at night, and Sundays.

Q. Of course, it is impossible for you to remember and tell the jury what he said every single time he came in, but I want you to summarize it as well as you can and tell what he said, if there were any few things that he said more than anything else summarize his statements in general if you can.

A. Mr. Steinbach always led up to the Talbott transaction as to when I intended to make it.

Q. Did he refer to the Talbotts in connection with the Arcadia Hotel?

A. Yes.

Q. And what did he say was their connection with the Arcadia Hotel?

A. He said they owned it.

Q. And what did he say about the rent during that time of the Eaton Hotel?

A. He would always ask if I had any rent for them, and I would give them all I had that came in, and then when I was going to make the deal with the Talbotts I said 'I don't see how we can make it, he doesn't want to give enough cash now to pay you up' and he says 'All right, give me a mortgage on your other place'.''

This is practically all plaintiff's testimony regarding the representations made by Steinbach.

The record discloses that plaintiff was in arrears with her rent on the Eaton hotel, $2,300, and Mr. Steinbach, the agent of the landlord, was very insistent on payment.

She further testified that at the time the release was signed, Steinbach handed her the pen and requested her to sign it. This release was introduced in evidence on the theory that the jury might draw the inference that Mr. Templeman and Mr. Steinbach must have known that the Talbotts did not own the furniture of the Arcadia hotel or they would not have asked for the release. It will be observed that the release only releases Templeman. However plausible such an argument or inference might be as to Templeman, no such inference could be reasonably drawn from the release as to defendant Steinbach. There is no competent evidence that Steinbach knew that defendants Talbott did not own the furniture in their possession nor is there any testimony that he intended that plaintiff

should rely on his statements or that he did anything to prevent plaintiff from making a full investigation regarding the ownership of the property prior to her purchase thereof. Plaintiff was no novice in dealing with this kind of property, having been in the business for 20 years and bought and sold many such hotel leases and equipments.

We are of the opinion that the court should have granted the motion for a directed verdict for defendant Steinbach.

The learned trial judge fully and carefully instructed the jury on all the elements of fraud and no exception was taken to any of his instructions covering that feature of the case.

The judgment of the circuit court will be reversed as to defendant Steinbach and affirmed as to defendant Templeman. It is so ordered.

RAND, C. J., KELLY and BAILEY, JJ., concur.