Argued July 13; reversed September 25; rehearing denied
October 16, 1934

## ZEDWICK ET AL. *v.* NEAL ET AL.
(35 P. (2d) 987)

*Earl P. Conrad,* of Toledo, and *Oscar Hayter,* of Dallas, for appellants.

*Mark V. Weatherford,* of Albany (George B. McCluskey, of Toledo, on the brief), for respondents.

CAMPBELL, J. On May 12, 1930, one Sarah C. Altree was the owner of a certain tract of land near Toledo, in Lincoln county, Oregon. On that date, for

the sum of $1,300, cash in hand, she executed a deed, absolute on its face, conveying said tract to plaintiffs herein. On June 12, 1930, plaintiffs and defendant, Fred Neal, entered into an agreement wherein plaintiffs agreed to sell and defendant Fred Neal agreed to buy the said tract for the sum of $3,300, payable at the rate of $50 per month without interest. Defendants also agreed to pay all accrued and accruing taxes and keep the buildings on the premises insured. It was further agreed therein that in case the payments and other conditions were not strictly performed at the time and in the manner provided therein, plaintiffs would have the option to declare all payments, theretofore made, forfeited, and defendant Fred Neal should have no further interest in the premises. Time was made of the essence of the contract.

Defendant Fred Neal made payments, over a period of time, amounting to $925. This sum was paid in part directly by defendant Fred Neal, and the sum of $25 per month thereof was paid by the Pacific Spruce Corporation as a monthly rental for certain water rights. Defendants neglected to pay the taxes and keep the buildings insured and plaintiffs were obliged to make payment therefor. In due course, plaintiffs notified defendant that plaintiffs had decided to exercise their option and declare the contract terminated. Thereafter, the instant suit was filed by plaintiffs for a strict foreclosure of said contract alleging said contract and the conditions thereof and the breach of said conditions by defendants.

Defendants filed an answer in which they admitted the execution of the contract but denied all other allegations of the complaint and, for a further and separate answer and defense, alleged in effect: That prior to

May 12, 1930, defendants negotiated with Sarah C. Altree for the purchase of the tract of land described in the contract and that she had agreed to sell it to them for the sum of $1,500; that, being without funds, they applied to plaintiffs for a loan of that amount so as to complete the transaction and agreed to pay plaintiffs a bonus of $200 on that amount of money if the loan could be obtained. They further agreed that they would repay the full sum of the loan together with the bonus of $200, in payments of $50 per month with interest at the rate of six per cent per annum and that plaintiffs promised to make said loan on the said terms offered by defendants. Defendants further alleged:

"* * * that thereafter and for the purpose of securing the same, the plaintiffs demanded and requested that in place of having the land deeded direct from said Altree to the defendants and the plaintiffs to be secured by a first mortgage upon said premises that they, the plaintiffs, would have the land deeded to plaintiffs and would execute a contract to secure said loan and the payment thereof to the defendants for the sum of the actual purchase price of the said land plus the sum of Two Hundred ($200.00) Dollars to be paid at the rate of Fifty ($50.00) per month; that the defendants accepted said offer and arrangement and pursuant thereto the plaintiffs paid the said Altree Thirteen Hundred ($1,300.00) Dollars for said land for the defendants herein and took, accepted and received the deed thereto pursuant to said arrangement and not otherwise, and the plaintiffs then undertook to have a contract made to the defendants to carry out the terms of said agreement and to secure plaintiffs for the making of said loan; that the plaintiffs actually paid the sum of Thirteen Hundred ($1,300.00) Dollars to said Altree for said land and there was due and owing from defendants to plaintiffs the sum of Fifteen Hundred ($1,500.00) Dollars with interest thereon at the rate of six per cent (6%) per annum until the same was paid at the rate of Fifty ($50.00) per month; that

the defendants did not at said time or any other time become indebted to plaintiffs for any amount in excess of said Fifteen Hundred ($1,500.00) Dollars; that for the purpose and with the fraudulent intent of exacting of and from the defendants an unlawful and usurious rate of interest plaintiffs prepared the said contract and agreement set forth in paragraph IV of plaintiffs' complaint; that each and all sums of money mentioned therein as due the plaintiffs in excess of the sum of Fifteen Hundred ($1,500.00) Dollars with interest thereon from the 12th day of June, 1930, at the rate of six per cent (6%) per annum less the payments which have [been] made thereon in the amount of Nine Hundred Seventy-five ($975.00) Dollars, was and is usurious and unlawful interest and was and is void and that the said contract was written and prepared by the plaintiffs with the fraudulent purpose of exacting of and from these defendants an unconscionable and fraudulent rate of interest and at and for the purpose of concealing the true and accurate agreement made and entered into between plaintiffs and defendants; * * * .''

The agreement set forth in paragraph IV of plaintiff's complaint is the contract of sale sought to be foreclosed herein.

The reply denied the material allegations of the separate answer and for a further reply alleged that plaintiff Paul Zedwick is the owner of the premises in question and that he became the owner thereof through purchase from Sarah C. Altree; that on June 12, 1930, he entered into the agreement with defendants referred to in the complaint filed herein; that plaintiffs agreed to sell the said premises to defendant Fred Neal, and that defendant Fred Neal agreed to purchase said premises for the sum of $2,500 and interest thereon at the rate of eight per cent per annum to be paid in monthly installments of $50 per month; that, in order to ascertain the approximate amount of interest that

would accrue on the deferred payments, plaintiff Paul Zedwick and defendant Fred Neal called to their assistance one William Walton, cashier of the First National Bank of Toledo, who advised them that the interest such balances would earn during the term it would take to complete the payment was $800. Thereupon this amount was added to the purchase price, the whole sum to be paid at the rate of $50 per month without further interest.

Upon trial, the circuit court found for defendants and fixed the sum already paid defendants at $1,082 and found that there was a balance due on the contract of $769.79, which defendants were ordered to pay plaintiffs at the rate of $50 per month and, when said sum should be paid in full, said plaintiffs should execute a good and sufficient deed conveying the premises to defendants. The court also found that plaintiffs had loaned to defendants the sum of $1,300 and that for the purpose of securing said loan, together with a bonus of $200 thereon, the deed from Sarah C. Altree was made to the plaintiffs direct and was only intended to be held by plaintiffs as security for said loan. ''That the contract set forth in plaintiffs' complaint herein be set aside, cancelled and held for naught.'' Plaintiffs appeal.

It will be observed that there are no acts of actionable fraud alleged in defendants' answer. Neither is there any testimony in the case showing facts constituting such fraud. The gist of the testimony of defendant Fred Neal is in effect: That he negotiated with Mrs. Altree and she agreed to sell the premises to him for $1,500 cash; that he did not have the money or any part of it, but thought that he could borrow it from plaintiff Paul Zedwick; that he brought plaintiff Paul Zedwick to see Mrs. Altree and Zedwick said that

"he would not pay more than $1,300 for the place". Thereafter in his, defendant Fred Neal's, absence, Mrs. Altree negotiated with plaintiff Paul Zedwick and sold the premises to plaintiffs for $1,300 and executed her deed to Paul Zedwick; that he, defendant, understood that plaintiff Paul Zedwick was making him a loan for that amount and took the deed as security for said loan; that, prior thereto, Paul Zedwick promised to buy the premises in question and then sell the same to him for an advance in price or bonus of $200, to be paid in monthly installments of $50 with interest at the rate of six per cent per annum. But, instead of complying with this promise, when plaintiff Paul Zedwick came to execute the contract of sale he exacted a price of $3,300 (being $2,500 principal and $800 interest) to be paid in monthly installments of $50 without further interest.

Mrs. Altree testified that she thought that Zedwick was buying the place for Fred Neal.

"Q. Did you at any time, consider that you were selling the property to Mr. Zedwick and not to Fred Neal?

"A. The understanding was that he was buying it for Fred Neal for $1,300 plus $200 bonus.

"Q. What did Zedwick say on that subject in any of the talks you had with him?

"A. He didn't say anything. That is, that day at the house he said 'he would only allow $1,300 for the place' and Fred Neal said 'he would pay Zedwick $200 bonus'. Fred said 'Now you understand how it is?' and I told him, 'Yes'."

She also testified that she preferred Neal as a purchaser, but it appears that that preference did not go to the extent of selling the premises to him on installment payments. Nowhere does she say that she

was not willing to sell to any one who would pay her the cash and she makes no complaint now that she was misled.

Defendant Fred Neal was fully informed of all the facts relating to the transaction before he executed the contract to buy; and, with full knowledge of all the details, he voluntarily executed the said contract set forth in paragraph IV of plaintiffs' complaint. He testified:

"A. He (Paul Zedwick) said he figured I ought to make a thousand dollars. I said, 'You know I won't do that'. I said 'You know I won't take the thousand dollars'. I said 'Mr. Zedwick, I see what you want'. I said 'You want a thousand dollars out of me'. I said 'That's what it looks to me like'. Well, he says 'I've got a chance to sell that place'. Well, I said that place was ours, 'That's our place; Mrs. Altree sold that to us for a home'. Well, he said 'I know, but', he says, 'I have got a chance to make some money on it'. I said, 'Well, I won't take no thousand dollars'. I said 'You know I wouldn't take that off of Mrs. Altree'. I said 'The place is ours and Mrs. Altree sold it with that intention because we had been friends together and she wouldn't let anybody else have it'. My wife protested. I said, 'I tell you what I will do; I will try a thousand dollars more'. I saw I was going to lose it and he was going to get it away from me and I would try to save it if I could. I said, 'Gentlemen, it will take me three years longer on the boom to pay for that and I wanted to make it twenty hundred and split the difference'. No, he said, he wouldn't do that. 'There is nothing in that for me.' Then I thought 'Why not make it twenty-five hundred dollars and when I pay you twenty-five hundred dollars you be paid in full'. He said 'No, there is no money in that for me'. He said 'That won't come up to what I can get'. And he says 'Mr. Walton, what is the rate on that?' He said 'What does that come to at fifty dollars a month', that twenty-five hundred dollars or something to that effect. 'What does that

bring that place to?' And they figured a little bit, and he said 'That place would be thirty-three hundred dollars'. I said 'Gentlemen, if I go into a contract like that it takes me three years longer on the boom'. He said, 'Was there any hard feelings'. I said, 'Well, it seems as if I can't help myself; I have made every effort to get the place clear and get it through Mrs. Altree's friendship,' and I felt that was the last chance I had if I got it. Mrs. Altree was supposed to be gone to California.''

■ Thus, from the defendant's own testimony, the most that might be said was that Paul Zedwick took advantage of Fred Neal's desire to secure this place as a home, to boost the price and drive a hard bargain and so informed Fred Neal before the contract of sale was executed. None of the facts connected with the transaction were concealed. Defendants were as well informed as the plaintiffs. Nearly every element of actionable fraud is lacking: *Howard v. Merrick,* 145 Or. 573 (27 P. (2d) 891); *Bevan v. Templemen,* 145 Or. 279 (26 P. (2d) 775); *Shafer v. Ekstrand,* 140 Or. 582 (14 P. (2d) 287); *Blair v. McCool,* 136 Or. 139 (295 P. 950); *Wheelright v. Vanderbilt,* 69 Or. 326 (138 P. 857), and many other Oregon cases.

■ There is really no evidence that the $1,300 paid by plaintiff Paul Zedwick was intended as a loan to Fred Neal. There is no evidence that Mrs. Altree ever agreed to sell the premises to defendants for that amount. The theory of defendants' case was that plaintiff Paul Zedwick promised to sell the premises to Fred Neal for an advance in price or bonus of $200 above what was paid Mrs. Altree. There is not a word of testimony that defendants were in any way bound to make the purchase from plaintiffs. There was no written memorandum; there was no money paid. On the other hand,

defendants voluntarily executed the contract sought to be foreclosed herein and made payments thereon for about one year according to its terms, without complaint. It was not until plaintiffs began to urge that payments be made more promptly that the claim of usury or fraud was made.

■ The law is well settled in this state that a deed absolute on its face may be shown to be a mortgage. But, in order to show this, the evidence must be clear, consistent and convincing: *Fetsch v. Pedersen*, 123 Or. 82 (260 P. 241) ; *Hall v. O'Connell*, 52 Or. 164 (95 P. 717) and cases cited therein.

We have no means of knowing what amount of money has been paid on the contract at this time. The decree of the circuit court will be reversed and the cause remanded with instructions to enter a decree foreclosing the contract, alleged in the complaint herein, and determine the amount that has been paid thereon from all sources, and the amount that is due according to the terms thereof and allowing defendants a reasonable time in which to pay the said amount in full, together with taxes and accruing taxes, and reasonable attorney's fees, to be fixed by the court, and, if defendants fail to make such payments by such time, that the contract be foreclosed and that defendants be barred and foreclosed of all right, title, and interest in and to said premises and appurtenances, said premises being described in said contract. Neither party to recover costs herein. It is so ordered.

RAND, C. J., and BEAN and BAILEY, JJ., concur.