Argued and submitted May 18, affirmed September 8, 1981

LUNDEN et al,
*Plaintiffs,*

*v.*

SMITH et al,
*Defendants.*

SMITH et al,
*Respondents,*

*v.*

WILSON, dba Zalph Wilson Realty,
*Appellant.*

(No. 8240, CA 17691)

632 P2d 1344

Steven K. Blackhurst, Portland, argued the cause for appellant. With him on the briefs was Lindsay, Hart, Neil & Weigler, Portland.

Richard C. Bemis, Portland, argued the cause for respondents. With him on the brief was Wilford K. Carey, Hood River.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

THORNTON, J., specially concurring opinion.

## RICHARDSON, P. J.

Plaintiffs brought this suit to rescind their purchase of a lighting fixture business. They contended that financial information furnished them as part of the sale negotiations was erroneous. The sellers (the Smiths) cross-complained against the real estate broker (Wilson) for restitution of his commission and claimed in separate counts that he wilfully or negligently participated in the preparation and communication of the erroneous information. Before trial, the Smiths agreed to rescission of the sale. The trial court, sitting without a jury, awarded the Smiths the relief against Wilson sought in the cross-complaint. Wilson appeals, and we affirm.

In February, 1979, the Smiths listed the business for sale with Wilson, a real estate broker who had previously done business with plaintiffs. After Wilson contacted plaintiffs, plaintiffs and the Smiths entered into an earnest money agreement which was subject, among other conditions, to the Smiths providing income information for plaintiffs' review. Wilson asked Mrs. Smith for a profit and loss statement, but was informed that none had been prepared and that financial information concerning the business was in the possession of a California accountant. According to his brief, Wilson then

"asked Mrs. Smith if there was some other way she could show the profits and losses for the business, and she said she could do so based on the business's check register.

"Shortly thereafter Mrs. Smith began to prepare monthly profit and loss statements for the business for 1978. The statements, which constitute Exhibit 4, show the monthly sales, purchases and expenses for the business. Purchases were subtracted from sales to arrive at what was labeled 'gross profit.' The expenses of the business were itemized and subtracted from 'gross profit' to arrive at 'net profit.' When she was preparing these statements Mrs. Smith asked Wilson to come to her house to assist her. Neither Mrs. Smith nor Wilson questioned the accounting method used by Mrs. Smith to arrive at the monthly 'gross profit' and 'net profit' figures.

"That evening Mrs. Smith and Wilson completed the monthly statements through September, 1978. A few days later Mrs. Smith completed the statements for the remaining months of 1978."

In sum, the statements identified the cash flow of the business as its income.

Wilson transmitted the statements to plaintiffs. He informed plaintiffs at that time, as Mrs. Smith had informed him, that the "statements were incomplete, as all expenses properly attributed to [the] business may not have been listed." Plaintiffs consulted with their banker and, possibly, their accountant about the statements and other aspects of the purchase of the business.

In March, 1979, at Wilson's instance, plaintiffs agreed that the conditions in the earnest money agreement had been satisfied. The following month, the Smiths received their 1978 tax returns from their accountant. The returns showed a net profit from the business substantially lower than the net profit figure for 1978 which had been furnished plaintiffs. This fact was apparently not communicated by the Smiths to either plaintiffs or Wilson.

■          The trial court found[1] that Wilson was negligent in performing his duties as a broker and that the Smiths were entitled to restitution of the commission. Wilson assigns error to that finding, contending that there was no evidence from which the court could infer that a reasonably prudent real estate broker in the community "would have known that the accounting method used by Mrs. Smith was inaccurate." Wilson argues that such a finding could not be made absent expert testimony and that none of the witnesses testified that a broker should have expertise in accounting methods. *See Getchell v. Mansfield,* 260 Or 174, 179-80, 489 P2d 953 (1971).

In our view, Wilson misses the point of the trial court's finding. The finding is not that Wilson was required to be an expert in accounting to meet the standard of care for brokers, but that (1) he *undertook* to participate in the preparation and transmittal of the financial statements to persons for whom he was a fiduciary; and (2) the mistakes

---

[1] Wilson denominates the trial court's oral statements at the conclusion of the trial as findings for purposes of his assignments of error. The court offered the parties the opportunity to submit proposed written findings, but none are included in the decree. The parties assume that the trial of the *cross-complaint* was an equitable proceeding and that our review is *de novo.* We accept that assumption for purposes of this appeal.

in the statements were so obvious that *anyone* involved in their preparation should have been aware of the problems.[2] The court did not hold that Wilson was required to understand accounting methods but that he violated his duty by engaging voluntarily in an accounting exercise he did not understand. As so understood, we agree with the finding.

---

[2] The judge stated:

"* * * From the evidence I have heard, I don't find any evidence that Mr. Wilson was aware or should have been aware that the actual figures submitted were in themselves inaccurate. I do find from the record that he was aware, as all parties were aware, since it is apparent on the face of the documents, that the figures were incomplete, but the real question I consider as pertinent in the case is whether Mr. Wilson knew or should have known in connection with handling this transaction that the method used was not accurate. Even if the figures had been absolutely accurate as furnished by Mrs. Smith and passed on to Mr. Lunden, does Mr. Wilson, as a Broker, have a duty to know or be in a position that he should know that the method was inaccurate. * * * [T]here is no question but what Mr. Wilson was present when Exhibit 4 was prepared, at least the first nine months of it, and assisted in the preparation of it. Now, Mr. Wilson, I don't mean to say by that that you directed the method or you told Mrs. Smith how to do that, that wasn't the evidence that I heard, but there is no escaping the fact that you were right there and assisted in the preparation of these papers. I think that is important in this respect, in that I am inclined to think that a purchaser putting a great deal of faith in a real estate broker, such as the Lunden's did here, would be more likely to accept and be influenced by documents that the broker assisted in writing part of them, helping with the calculating machine to some extent or part, that the typical person would be more likely to rely on documents that a person may have faith and trust and confidence in and actually prepared rather than something that may have come in the mail from strangers. I think the relationship between the broker and the purchasers is pertinent to that extent. I am satisfied from Mr.—or I don't need to reach a finding as to Mr. Wilson's statement today that he didn't fully understand this at the time in question, he testified last week that he was not an accountant and didn't understand those things and we did have expert testimony from another broker who implied that under those circumstances the broker would have a duty to seek outside expert opinion through an accountant. I don't need to go quite that far in this case because I am making a finding that based upon Mr. Wilson's personal participation in the case he should have known that the documents prepared did not accurately reflect the income for 1978, and the reason I make that Finding, and I am satisfied from just looking at Exhibit 4 itself that it supports it, that just as I look at the months Mr. Wilson prepared where he wrote down in his own handwriting the receipts for the months compared to the purchases for those months and you compare those months that he actually wrote the figures down, it would be apparent just in looking at those months that there were substantial discrepancies in the relationship between the cost of goods sold to the amount of goods sold which would make it apparent on the face of that to anyone preparing that that these were not constant monthly figures. You can look at that and see that the ratio of cost of goods sold would vary widely, which, in my opinion, should put a real estate broker in a position of Mr. Wilson, who had taken on the additional responsibility of actually gathering up these figures, writing them out in part in his

We disagree with Wilson's contention that expert testimony was needed to support a finding that his conduct amounted to negligence. In *Bevan v. Templeman,* 145 Or 279, 26 P2d 775 (1933), the court stated, with reference to the defendant broker's duty:

"* * * It was therefore incumbent upon him to make a full and truthful disclosure of all facts coming to his knowledge or that he, by reasonable diligence, could discover, likely to affect the interest of either of his clients and the fact that he was agent for both parties did not release him of this responsibility and duty. * * *" 145 Or at 284.

In *Prall v. Gooden et ux,* 226 Or 554, 360 P2d 759 (1961), the court stated:

"The broker should make his explanation commensurate with the education and understanding of the people he is dealing with, and if he is unable to give competent advice he should allow them to obtain it elsewhere. [Citation omitted.]" 226 Or at 561.

Wilson volunteered to participate in preparing information which, with due diligence, he could have ascertained was faulty; and he prepared and transmitted information which, according to his own testimony, he did not understand. No expert testimony was required to show that his conduct failed to meet the applicable standard of care. *See Getchell v. Mansfield, supra,* 260 Or at 179-80; *Simpson v. Sisters of Charity of Providence,* 284 Or 547, 557, 588 P2d 4 (1978).[3]

Wilson next argues that there was expert testimony that a broker's role is not to evaluate accounting methodology, but to ensure that the buyer and seller obtain suitable advice from other sources concerning the financial data furnished in connection with a sale. Wilson asserts

own handwriting and passing them on to a purchaser who has a great deal of faith and reliance on the broker, that under those facts and the peculiar facts that apply in this case, I feel that the broker has a duty to know that there is something wrong with that method and not pass it on to a purchaser as being a reflection of income for the business for the calendar year 1978. * * *"

[3] We assume without deciding that Wilson is correct in his premise that expert testimony would be required to establish the negligence of a real estate broker under the same basic circumstances as in professional malpractice cases, *i.e.,* where the factfinder is incapable of determining what is reasonable conduct without expert assistance.

that he did ensure that such advice was obtained and that plaintiffs were advised by a banker and, possibly, by an accountant. Arguably, he therefore satisfied his duty under *Prall v. Gooden et ux, supra.* The problem, however, is that he did more. He participated in preparing and he transmitted to the plaintiffs the data which he contends the banker and accountant and not he should have evaluated for correctness.

■     Wilson's next point is related. He states:

"Given the fact that both the buyer and seller consulted with their financial advisers concerning this transaction, the court should not have found that Wilson, as a real estate broker, was responsible for determining whether the accounting method used by Mrs. Smith was correct. If experts like [a named advisor] did not perceive the accounting error, the court should not have expected Wilson to perceive it. This is especially so given the expert testimony that most real estate brokers in Hood River would not understand the distinction between a cash flow and an income statement."

This argument is unpersuasive. Any defect in the advice the parties to the transaction received from other sources certainly did not cure the problems for which Wilson was responsible. Moreover, the fact that the financial advisors failed to find the errors in the statements does not mean that Wilson's involvement in creating those errors was not negligent. In essence, his point is simply a reiteration of his earlier argument that, as a broker, he was not required to understand accounting and that that is the more apparent if certain bankers or accountants were hobbled by comparable limitations. But as we have noted, the trial court's finding of negligence was not based significantly on the deficiency in Wilson's accounting expertise.

■     In his opening brief, Wilson contended that the trial court found Mrs. Smith, as well as him, negligent in preparing and disseminating the statements and that the court should have and did not apply the comparative fault test of ORS 18.470. In their brief, the Smiths respond:

"The defense of comparative negligence applies to actions at law to recover damages for death or injury to persons or property. [Citation omitted.] This proceeding is

a suit in equity for rescission. * * * Comparative or contributory negligence is not and should not be a defense to a contractual cross claim."

In his reply brief, Wilson then states:

"* * * Wilson is willing to accept [the Smiths'] analysis.

"Given that analysis, however, the trial court should not have awarded restitution, an equitable remedy, because the sellers do not have 'clean hands.' The undisputed testimony at trial was that Mrs. Smith, after preparing Exhibit 4 which showed the net profit for the business to be $35,505.06, remained silent when she received her 1978 tax return from the accountant which showed the net profit for the business to be $7,879.97. She was the only person aware of this nearly five-fold discrepancy, and she did not tell anyone. Her silence, if not outright fraud, should certainly preclude the sellers from any entitlement to equitable relief."

There was no finding below, and we make none here, that the conduct of the parties amounted to more than negligence. We hold that the Smiths have not come to equity with unclean hands.

Affirmed.

**THORNTON, J.,** specially concurring.

I agree that the Smiths were entitled to restitution of the real estate broker's commission, but do not agree with some of the majority's reasons in arriving at this result.

The evidence established that Mrs. Smith furnished the inaccurate income and expenses information to Wilson and participated equally with Wilson in preparing and furnishing the faulty financial statements to plaintiffs. In view of this both the Smiths and Wilson were equally responsible for misleading plaintiffs. Under these circumstances the equitable solution would be to put all parties, including Wilson and the Smiths, back in *status quo ante. Olson v. Pixler et ux,* 138 Or 250, 6 P2d 23 (1931), *overruled on other grounds, Grider v. Turnbow,* 162 Or 622, 94 P2d 285 (1939); *Miles v. Hemenway,* 59 Or 318, 111 P 696; 117 P 273 (1911). Restoration of the *status quo* is an essential element of rescission. *Johnston v. Gilbert,* 234 Or 350, 353, 382 P2d 87 (1963); *Howard v. Jackson,* 213 Or

447, 324 P2d 757 (1958). That should be the proper rationale on which to rest our decision.

I disagree with both the majority and the trial court in suggesting, if not resting the decision in this case on, an alleged breach of a standard of professional skill and competence applicable to real estate brokers.

The trial judge found that Wilson should have known that the faulty profit and loss statement did not accurately reflect the income of the business and that he should have informed both the sellers and buyers of this.

First, it is unnecessary for this court to reach this issue. Second, if we do take this step, I believe that both the majority and the trial court err in formulating and applying an improper standard of professional competence and conduct to Wilson's actions in the transaction. *See Prall v. Gooden et ux,* 226 Or 554, 360 P2d 759 (1961).

In my view, the proper standard is this: Would a reasonably prudent real estate broker in Hood River have understood the difference between a cash-flow statement and an income and expense statement? Contrary to the majority, the record does not in my opinion support the trial judge's finding that a reasonably prudent real estate broker in Hood River would have understood the difference between a cash-flow statement and an income statement.