No. 90-031

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JOHN HAROLD LEE, JR., and SALLY
JEAN LEE,

      Plaintiffs and Respondents,

      v.

JANE C. ARMSTRONG, a/k/a CLARA JANE
ARMSTRONG, a/k/a JANE ARMSTRONG DUNN,
VICTORIA KAY PIEDALUE,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Hugh G. Kidder, Missoula, Montana

      For Respondent:

      William R. Baldassin, Sullivan & Baldassin,
          Missoula, Montana

Submitted on Briefs:  May 16, 1990
Decided:  July 30, 1990

Filed:

Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Jane C. Armstrong appeals from the determination of the District Court, Fourth Judicial District, Missoula County, that Armstrong's failure to convey real property to respondents constituted actual and constructive fraud entitling respondents to $17,838.50 in actual damages, $5,000 in punitive damages, $8,818.89 in attorney fees and costs. We affirm.

Appellant has raised numerous issues, several of which are not material to our determination whether to affirm the case. We therefore limit the issues raised by Armstrong to the following:

1. Whether the District Court erred in concluding that Armstrong's acts and representations constituted actual fraud.

2. Whether the District Court erred in concluding that Armstrong's acts concealed the true state of affairs concerning the property, constituting constructive fraud.

3. Whether the District Court erred in awarding Lee's actual and punitive damages.

Jeanne A. Roth sold real property to Cunninghams in December, 1976. Cunninghams sold 20.1 acres of this property to Stiner in January, 1979. Stiner divided her property in two and sold 10 acres to Sheppard in May of 1979. Sheppard divided his property in two and sold 5 acres to appellant Clara Jane Armstrong and her husband, Byron John Armstrong, by contract for deed in May, 1979. Armstrongs acquired their interest as tenants in common.

Byron John Armstrong died in August, 1983. Prior to her husband's death, Jane C. Armstrong, by certificate of survey, attempted to divide the parcel in two, as 1.25 acre and 3.75 acre plots. This certificate was not signed by the other owner, Byron John Armstrong, and was not signed by Jane C. Armstrong in the name in which she acquired her interest. No instrument of record was ever filed with the Missoula County Clerk and Recorder terminating the interest of Byron John Armstrong. After the death of her husband, Jane Armstrong again attempted to divide the property by

2

certificate of survey, dividing the 3.75 acre portion into three 1.25 acre parcels. This second attempted division was deficient for the same reasons as the first.

Jane Armstrong attempted to transfer her interest in the 1.25 acre parcel at issue to her daughter, Victoria Kay Piedalue. No document transferring the interest of Jane Armstrong to Victoria Piedalue was ever recorded.

On or about August 1, 1984, respondents, John Harold Lee and Sally Jean Lee, entered into a contract for deed to purchase the property at issue from Victoria Kay Piedalue. All discussions and negotiations regarding the contract for deed occurred between the Lees and Jane Armstrong, acting as Piedalue's attorney in fact. Piedalue had no involvement with the transaction.

The underlying Sheppard to Armstrong contract provided that "Grantees expressly understand that the property described herein is unrecordable in the Office of the Missoula County Clerk and Recorder until Grantor can qualify for an occasional sale exemption within the terms of the Montana Subdivision and Platting Act." Jane Armstrong failed to include a similar provision in the Armstrong-Lee contract which she personally drafted.

Jane Armstrong also failed to include the following language mandated under § 76-3-303(5), MCA, to be included in all contracts for deed: "The real property which is the subject hereof has not been finally platted, and until a final plat identifying the property has been filed with the county clerk and recorder, title to the property cannot be transferred in any manner." Nor did the contract provide that the payments by Lees were not to be distributed by the escrow agent to Piedalue or Armstrong until the final plat was filed, and that if the plat was not filed within two years of preliminary approval, all payments were to be refunded.

The contract for deed contained a covenant that Piedalue had marketable title to the property when, in fact, she had no recordable interest in the property whatsoever.

The contract was subject to underlying obligations, and states that Lees were purchasing the property subject to those

3

obligations. However, the Lees were not permitted to review the underlying Sheppard-Armstrong contract despite repeated requests. Jane Armstrong had represented that Lees could prepay the entire remaining balance at any time upon two weeks' advance notice. No restrictions are noted in either the contract or the escrow agreement. However, had Lees been able to review the Sheppard-Armstrong contract, they would have seen that Jane Armstrong could not freely prepay all consideration due under the underlying contract until the year 1997.

Jane Armstrong indicated that she had filed the final certificate of survey, when in fact she had not done so. It was not filed until after this suit commenced. Armstrong also represented she would record the notice of purchasers interest, and took $50 from Lees for that purpose. That notice was not recorded.

On December 4, 1985, the Lees, through counsel, notified Armstrong and Piedalue of their default under the contract for failure to file the certificate of survey or notice of purchaser's interest. In the letter, Armstrong and Piedalue were urged to take all curative measures. In follow-up correspondence dated May 9, 1986, counsel for Lees informed Piedalue and Armstrong that in light of their failure to act, the escrow agent had been instructed to hold all funds until status of the title had been resolved.

On August 1, 1986, Lees filed suit, alleging fraud, constructive fraud, deceptive practices, and breach of contract. Default was entered against Piedalue on June 3, 1987.

On November 17, 1987, Lees notified Armstrong's attorney by certified mail that Lees were willing and able to pay the remaining balance on the contract, and stated that Armstrong had 10 days to provide proof of clear and unencumbered title to the property in order to forestall litigation. Armstrong failed to comply.

The case proceeded to a bench trial on July 17, 1989. The District Court found for the Lees on all issues. This appeal resulted.

Jane Armstrong contends that the District Court erred in attributing fraud to her acts. Specifically, Armstrong states that

4

her representations that Piedalue could and would convey title to the Lees and that there was a legally established parcel were not acts constituting actual fraud.

The unrefuted facts of this case are that Jane Armstrong represented that Piedalue had good and merchantable title at the time of the contract, when Piedalue neither had title nor any recorded interest in the property whatsoever. Armstrong's argument is that since she was not obligated to produce title until the entire contract price was paid, the fact that she could not produce good title at the beginning of the contract does not constitute fraud. This argument has no merit in this case. One of the bases for fraud was that Jane Armstrong represented that the seller had good and merchantable title when she did not. In addition, Armstrong failed to inform Lees that her late husband's interest in the property had not been terminated. Armstrong told Lees that they could prepay the balance due at any time, and that the final certificate of survey relating to the property had been filed. These representations were false.

This Court has previously stated the nine requisite elements of fraud, in Van Ettinger v. Pappin (1978), 180 Mont. 1, 588 P.2d 988, 994:

1. A representation;
2. Falsity of the representation;
3. Materiality of the representation;
4. Speaker's knowledge of the falsity of the representation or ignorance of its truth;
5. Speaker's intent it should be relied upon;
6. The hearer's ignorance of the falsity of the representation;
7. The hearer's reliance on the representation;
8. The hearer's right to rely on the representation;
9. Consequent and proximate injury caused by the reliance on the representation.

The trial court specifically found Armstrong's above-stated representations to be false, and the materiality thereof. The court further found that Armstrong knew or should have known of their falsity, that Lees were unaware of the falsity and rightfully

5

relied upon the representations. This Court will not set aside the lower court's findings absent clear error. Rule 52(a), M.R.Civ.P. The evidence will be viewed in the light most favorable to the prevailing party, and credibility of witnesses and the weight accorded their testimony is for the District Court's determination in non-jury settings. Bauer Ranch, Inc. v. Mountain West Farm Bureau Mutual Insurance Co. (1985), 215 Mont. 153, 695 P.2d 1307.

Jane Armstrong next contends that the lower court erred in its findings of constructive fraud. Specifically, Armstrong states that no constructive fraud was perpetrated upon the Lees regarding the true state of affairs of the property, as Lees had ample time and the duty to discover all pertinent facts.

However, the record is clear that Lees were persistent in their requests to view the underlying contract between Armstrong and her seller. Armstrong prevented Lees from viewing that contract, thereby denying Lees the opportunity to discover the defects in the title. Without viewing the underlying contract, Lees had no means of detecting the falsity of Armstrong's assertions that Lees could prepay the amount due on their contract.

Also clear from the record is that Armstrong represented that Piedalue had an interest in the property, Armstrong having conveyed her interest to Piedalue. This representation was false, as no transfer of that interest was ever recorded and Armstrong was unable, as one of two tenants in common, to effect such a transfer.

Further, Armstrong repeatedly assured Lees that a final certificate of survey would be filed. Nonetheless, the final

6

certificate was not filed until after Lees were compelled to file suit.

Section 28-2-406, MCA, describes constructive fraud:

> What constitutes constructive fraud. Constructive fraud consists in: (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

In Moschelle v. Hulse (1980), 190 Mont. 532, 622 P.2d 155, 158, this Court, in construing § 28-2-406, MCA, stated:

> Dishonesty of purpose or intent to deceive is not a requirement under this statute. Other jurisdictions hold that constructive fraud is invoked as a matter of law to prevent a party from being unjustly enriched as a result of false statements made, even if the deception is not knowingly made. (Cites omitted.)

> * * * *

> Withholding relevant facts concerning purchased property can be a fraudulent act. (Cite omitted.) Furthermore, where a vendor by his conduct or words creates a false impression concerning a matter of vital importance to the purchaser, full disclosure of relevant facts may be required.

This Court further stated in Jenkins v. Hillard (1982), 199 Mont. 1, 647 P.2d 354, 357, that:

> . . . [W]here a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense, to an action for recission or for damages arising out of the deceit, that the party to whom the representations were made might, with due diligence, have discovered their falsity, and

that he made no searching inquiry into the facts . . .
(Citing authority.)

The District Court here found that Jane Armstrong had a duty to disclose the facts regarding the title and the underlying contract. Armstrong did not fully disclose all pertinent facts, which the lower court found constituted constructive fraud.

Armstrong next contends that the District Court erred in granting Lees damages under recission of contract, rather than damages for breach of contract.

Armstrong misconstrues the damages awarded Lees. The court awarded the Lees $17,838.50 in actual damages resulting from Armstrong's fraud and misrepresentation. This amount consisted of Lee's down payment and monthly payments, property improvements and moving expenses. These were out-of-pocket expenses incurred by the Lees that the court found recoverable due to Armstrong's actual or constructive fraud. These are clearly not recission or breach of contract damages, as Armstrong was not a party to the contract. Armstrong argues that, at the least, the $7,965 in monthly payments (of $135 per month) should not be recoverable, but should be considered as rent. We disagree. Lees rightfully assumed at the time they entered the contract that their $135 per month payments would entitle them to use the property and to build equity in it. Because of Armstrong's fraud, Lees built up no equity, and Armstrong should not prosper by her misrepresentation. The court's actual damages award was proper.

Armstrong also takes issue with the court's award of $5,000 in punitive damages, citing § 27-1-220, MCA, which prohibits

punitive damages arising from a contract. However, § 27-1-220 was enacted in 1987, while this suit was filed in 1986. Compiler's Comments to the Annotations state that § 27-1-220 affects only those claims arising after the effective date of the Act. The statute in effect at the time suit was filed was § 27-1-221, MCA (1985), which read:

> When exemplary damages allowed. (1) Subject to subsection (2), in any action for a breach of an obligation not arising from contract where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant.

This Court has determined that if the conduct of a particular defendant is found to be fraudulent, under § 27-1-221, MCA, punitive damages may be awarded and an underlying contract does not defeat such an award. Purcell v. Automatic Gas Distributors, Inc. (1983), 207 Mont. 223, 673 P.2d 1246. The amount of punitive damages awarded is within the sound discretion of the trier of fact, Castillo v. Franks (1984), 213 Mont. 232, 690 P.2d 425, and where the District Court sits as trier of fact, it may award punitive damages. Shors v. Branch (1986), 221 Mont. 390, 720 P.2d 239.

Jane Armstrong raises the issue of whether the lower court erred in its determination that she is not entitled to attorney fees under § 28-3-704, MCA, and its provision for reciprocal contract rights to such fees. However, as Armstrong has been unsuccessful in both her suit and appeal, the application of the statute affords her no relief for attorneys fees.

9

Affirmed.

John C. Sheehy
                              Justice

We Concur:

J. A. Turnage
Chief Justice

John Conway Harrison

William E. Hunt

Diane G. Barz
Justices

10