No. 95-378

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

---

KATHARINE GAIL DURBIN and
PHIL F. DURBIN, individuals,

    Plaintiffs and Appellants,

    v.

BARBARA ROSS an individual,
d/b/a/ ROSS REALTY; LYNNE PIAZZOLA,
an individual; WAYNE A. SHERRILL
and RACHEL SHERRILL, individuals;
and MICHAEL J. SHERRILL, an
individual,,

    Defendants and Respondents.

FILED

MAY 14 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Donald V. Snavely, Missoula, Montana

    For Respondent:

    Tracy Axelberg and Gary D. Kalkstein, Axelberg &
Kalkstein, Missoula, Montana

---

Submitted on Briefs:  January 18, 1996

Decided:  May 14, 1996

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Katharine and Phil Durbin (the Durbins) appeal from the Montana Twentieth Judicial District Court, Sanders County, order granting summary judgment in favor of Barbara Ross, Ross Realty, Lynne Piazzola (the Realtors) and dismissing the Durbins' claims against the Realtors. We reverse and remand.

ISSUES

1. Did the District Court err in ruling that the Durbins failed to establish a standard of care through the expert testimony of a real estate broker?

2. Should this Court direct the District Court on the admissibility of expert standard of care testimony?

BACKGROUND

The parties agreed to the following facts in the pretrial order:

> 1. Plaintiffs Phil and Katharine "Gail" Durbin are husband and wife. On April 26, 1993 the Durbins purchased for the sum of $35,000.00 a piece of property consisting of 20 acres and a single-family residence located at 209 Upper River Road, Heron, Montana (the "Property") from Defendants Wayne, Rachel and Michael Sherrill, the sellers of the Property.
> 2. Defendants Wayne and Rachel Sherrill and their children resided on the Property from May of 1987 until they sold the Property to the Durbins. Defendant Michael Sherrill resided on the Property for part of that time.
> 3. Defendants Lynne Piazzola and Barbara Ross are real estate agents licensed by the State of Montana. Lynne Piazzola is a licensed sales agent and was the listing and sales agent for the sale of the Property to the Durbins. Barbara Ross was the supervising broker for Defendant Piazzola for this sale. Defendants Piazzola and Ross both worked for Ross Realty, a real estate office located in Noxon, Montana. Defendant Ross was the owner of Ross Realty at the time of this sale.

4.   This case involves claims by Plaintiffs Durbin that the condition of the Property was misrepresented to them.   The Durbins contend, among other things, that the septic system, household water system, and other aspects of the Property were not accurately represented by the Defendants.   Defendants Ross and Piazzola deny these contentions. Defendants Ross and Piazzola contend, among other things, that they did not make any misrepresentations to the Durbins. . . .

The Durbins contend that the Realtors told them that 1) the property had a legal septic system with a 750 gallon tank, when there was only a 200 gallon drywell with no drainfield; 2) that the household water was safe for normal household purposes when the water was contaminated with coliform bacteria and was not safe for any household purposes; and 3) that the access road was on the property when it was on the neighbor's property.   The Durbins further contend that the Realtors failed to disclose other serious defects in the home such as the fact that there were no hot water pipes and thus no hot water, that the plumbing drain lines were not connected to the main sewer line and drained directly into the soil in the crawlspace under the home, and that the roof leaked. In summary, the Durbins argue that the Realtors misrepresented that the house was in good condition.

The   Realtors   dispute   the   Durbins'   allegations   of misrepresentation.   The Realtors in fact claim that they performed a diligent inspection of the property and disclosed the information gleaned from that inspection.   They also claim that the Sherrills informed the Durbins of the property's shortcomings and that those shortcomings were reflected in the purchase price.

The Durbins were not represented by an agent in the transaction. Therefore, the Durbins filed a complaint against the Realtors and the Sherrills claiming that they made material misrepresentations about the property, concealed material facts regarding the property, and that the Durbins relied on the information in agreeing to purchase the property. The Durbins disclosed their trial expert on January 31, 1995, but later withdrew that expert witness.

Defendants Wayne Sherrill, Rachel Sherrill, and Michael Sherrill did not appear in the action. Their defaults were entered on February 2, 1994. The Realtors moved for summary judgment on the ground that the Durbins could not prove any of their claims without expert testimony establishing the relevant standard of care. The District Court granted summary judgment in favor of the Realtors and pursuant to Rule 54(b), M.R.Civ. P., certified for immediate appeal its order dismissing all claims against the Realtors. The Durbins appeal the District Court's determination that for the Realtors to be found liable as individuals for their conduct toward the Durbins, the Durbins must first establish a duty owed by the seller's broker to the purchasers and that the standard of care relating to such duty and breach thereof must be established by expert testimony as a matter of law.

DISCUSSION

1. Did the District Court err in ruling that the Durbins failed to establish a standard of care through the expert testimony of a real estate broker?

The Durbins contend that the Realtors committed actual fraud and constructive fraud by misrepresenting the condition of the property or, in the alternative, committed negligent misrepresentation by failing to exercise reasonable care in investigating the truth of the information they passed on to the Durbins, violated the Montana Real Estate Licensing Act by misrepresenting facts about the property, and violated the Montana Consumer Protection Act by committing deceptive acts in the conduct of their real estate business. The Durbins argue that standard of care testimony is neither necessary nor relevant to these claims. Specifically, the Durbins argue that they do not have to present expert testimony to establish claims for fraud and claims of statutory violations in this case for two reasons. First, the Realtors did not represent the Durbins in this transaction and thus did not create a professional relationship. Second, the elements of the fraud claims focus on the knowledge and state of mind of the Realtors in this case and not on the standard of care by other professionals and the statutory violations involve the conduct of the Realtors in this case and whether that conduct conformed with statutorily mandated rules. In summary, the Durbins assert that the District Court erred in granting summary judgment because expert testimony is irrelevant to any factual issue required to establish the Durbins' claims.

In contrast, the Realtors assert that the District Court properly granted summary judgment finding that the gravamen of the Durbins' claims sounds in negligence and that these claims fail

because the Durbins did not establish the appropriate standard of care and breach of that standard. The Realtors further assert that the Durbins had to provide expert testimony to prove duty and breach in a negligence claim against a professional.

We review a grant of summary judgment *de novo* using the same criteria initially used by the District Court under Rule 56, M.R.Civ.P. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. Therefore, we determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. <u>Mead</u>, 872 P.2d at 785.

The Durbins do not dispute that, were they pursuing a professional negligence claim against their own broker, they would need to produce expert standard of care testimony. They do not assert a professional negligence claim because the Realtors did not represent the Durbins in a professional capacity. Instead, the Durbins assert common law and statutory fraud theories of recovery which do not require proof of the standard of conduct exercised by other brokers. The essence of the Durbins' **claims** sound in fraudulent misrepresentation and nondisclosure of material facts concerning the property.

**A. Actual Fraud and Constructive Fraud**

In Lee v. Armstrong (1990), 244 Mont. 289, 293, 798 P.2d 84, 87, we delineated the nine elements of actual fraud: (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) speaker's intent

6

it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by the reliance on the representation. These elements focus on the knowledge and intent of the broker involved in the transaction. The standard of care exercised by other brokers in similar transactions does not have bearing on what brokers in a specific case know or intend. See e.g., State v. Howard (1981), 195 Mont. 400, 404-05, 637 P.2d 15, 17. In Howard, we held that the jury was as qualified as the doctor to infer the defendant's intent from the nature of the injuries the defendant inflicted. Howard, 637 P.2d at 17; see also U.S. v. Clapp (8th Cir. 1995), 46 F.3d 795.

In Clapp, the defendant offered expert testimony to show that he had acted without intent to defraud. In holding that expert testimony was not necessary to illuminate the defendant's intent, the court noted that expert testimony is appropriate when it "relates to issues that are beyond the ken of people of ordinary experience," but is superfluous where the subject matter is within the knowledge or experience of laypersons. Clapp, 46 F.3d at 802 (quoting United States v. French (8th Cir. 1993), 12 F.3d 114, 116).

We have similarly held that "[t]he test for the admissibility of expert testimony is whether the matter is sufficiently beyond common experience that the opinion of the expert will assist the trier of fact to understand the evidence or to determine a fact in

issue." Jim's Excavating Service v. HKM Assoc. (1994), 265 **Mont.** 494, 509, 878 P.2d 248, 257 (construing Rule 702, M.R.Evid.). For example, in Jim's Excavating, we held that the expert's opinion was based on the type of data which is reasonably relied on by experts in the accounting field and was not a matter within the common experience of a jury, and that there was adequate opportunity for cross examination. We therefore concluded that the district court did not err in allowing the testimony. Jim's Excavating, 878 P.2d at 258.

While actual fraud hinges on the knowledge and intent of the defendant, constructive fraud hinges only on the knowledge of the defendant. Lee, 798 P.2d at 88. Courts may invoke constructive fraud as a matter of law to prevent a party from being unjustly enriched as a result of false statements made, even if the false statement is not knowingly made. Lee, 798 P.2d at 88. "Withholding relevant facts concerning purchased property can be a fraudulent act. Furthermore, where a vendor by his conduct or words creates a false impression concerning a matter of vital importance to the purchaser, full disclosure of relevant facts may be required." Lee, 798 P.2d at 88 (quoting Moschelle v. Hulse (1980), 190 Mont. 532, 537, 622 P.2d 155, 159).

In Lee, we further held that

> [w]here a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense . . . that the party to whom the representations were made might, with due diligence, have discovered their falsity, and that he made no searching inquiry into the facts. . . .

8

Lee, 798 P.2d at 88.   In Lee, we concluded that the district court correctly found that the defendant did not fully disclose all pertinent facts, which constituted constructive fraud.

In the instant case, none of the elements of claims for actual or constructive fraud concerns the standard of care exercised by other real estate brokers.  Instead, the elements focus on the knowledge and intent of the broker, issues which juries regularly face and determine without assistance from expert testimony. In summary, expert standard of care testimony is not necessary in the instant case, where the Realtors are held to the same standard as an ordinary citizen in a claim for fraud.  In fact, the standard is a common law standard based on the individual knowledge and intent of the defendant, not on the custom or practice of other professionals within the real estate profession.  For example, if all brokers lied in order to sell a property, then lying would be a standard industry practice, absolving the brokers from fraud. The Realtors are held to the same standard of care as other citizens of Montana; they may not intentionally or negligently defraud a third party. Accordingly, we hold that expert testimony is not relevant to establishing the Realtors' duty toward third parties such as the Durbins.

B. Negligent Misrepresentation

In the alternative to their fraud claims, the Durbins assert a claim for negligent misrepresentation against the Realtors.  The Durbins base their claim on the Realtors' alleged failure to exercise the care of a reasonable person in obtaining or

9

communicating information to the Durbins.  The Durbins concede that real estate sales is a profession or trade requiring expert testimony if the broker violates a duty to his or her client and the conduct in question is beyond the experience of ordinary laypersons.   However, they contend that they did not have a professional relationship with the Realtors, and therefore do not assert a professional negligence claim against them.

The Realtors, on the other hand, argue that the gravamen of the Durbins' claims sounds in professional negligence and therefore they must provide expert testimony to prove elements of duty and breach in their claim against the Realtors.  The Realtors support their argument by citing to Section 229A of the Restatement (Second) of Torts, which provides:

> Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

Comment c to § 229A of the Restatement states that the rule does not depend on the existence of an enforceable contract between the parties,  it applies equally to professional services rendered gratuitously such as a physician treating a charity patient. An undertaking by the defendant serves as the basis of the rule.  The Durbins assert that § 229A of the Restatement emphasizes that a professional relationship must exist between the plaintiff and the defendant before the standard of care for similarly situated professionals becomes relevant.

10

We have held that to establish professional negligence action, the "plaintiff must prove that the professional owed him a duty, [and] that the professional failed to live up to that duty, thus causing damages to the plaintiff." Lorash v. Epstein (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337. For example, in pursuing a negligence action against an attorney, the plaintiff must initially establish the existence of an attorney-client relationship. Lorash, 767 P.2d at 1337. In Lorash, the plaintiff was not able to establish an attorney-client relationship which would impose a duty to foreclose the plaintiff's mechanic's lien. Lorash, 767 P.2d at 1337. Similarly, in Carlson v. Morton (1987), 229 Mont. 234, 238, 745 P.2d 1133, 1136, we stated that in any professional negligence action, the plaintiff must prove that the professional owed him a duty and that the professional failed to live up to that duty, causing damages to the plaintiff.

In the instant case, the Realtors did not undertake to represent the Durbins; there was no professional relationship. Any duty the Realtors owed to the Durbins did not arise **from a** professional relationship. Without a duty arising from a professional relationship, there can be no claim of professional negligence. The Durbins appropriately brought a negligent misrepresentation claim instead of a professional negligence claim.

In State Bank of Townsend v. Maryann's, Inc. (1983), 204 Mont. 21, 33, 664 P.2d 295, 301, we approved the definition of negligent misrepresentation as contained in Restatement (Second) of Torts § 552. Section 522 provides:

11

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

In considering this definition, we looked to the comments to the Restatement, noting that they state that liability imposed by subsection (1) is based on negligence if and only if the defendant has failed to exercise the care or competence of a reasonable man in obtaining or communicating the information. State Bank of Townsend, 664 P.2d at 302. Moreover, in Thayer v. Hicks (1990), 243 Mont. 138, 149, 793 P.2d 784, 791, we held that an accountant owed a duty of care to third parties with whom he was not in privity of contract but whom he was aware relied on his work product in connection with a particular transaction.

In Wagner v. Cutler (1988), 232 Mont. 332, 757 P.2d 779, the purchaser of residential real estate brought suit against the vendor for defects in the home. The plaintiff contacted a real estate agent in Bozeman who showed plaintiff the house and who represented that the house was well built and according to code. Wagner, 757 P.2d at 781. The plaintiff moved in and subsequently discovered defects in the house such as a hazardous chimney, poor ceiling insulation, a broken sewage pump, and a faulty lawn sprinkler. The plaintiff sued to recover damages under misrepresentation and violation of the duty to inspect and disclose defects. Applying § 552 of the Restatement, we held that the plaintiff purchaser did not have to provide expert standard of care

12

testimony to establish the vendor's duty. We noted that the test for the admissibility of expert testimony is whether the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. We held that there was no requirement of specialized knowledge in the negligent misrepresentation claim. The defendant had a duty to obtain and communicate information on the true condition of the house and failed to do so. Therefore, we concluded that the district court properly determined that the defendant failed to use reasonable care. Wagner, 757 P.2d at 783; see also Lunden v. Smith (Or. App. 1981), 632 P.2d 1344.

In Lunden, plaintiff buyers brought suit to rescind their purchase of a lighting fixture business. Lunden, 632 P.2d at 1345. The sellers cross complained against their broker. The appellate court affirmed the district court's determination that the broker was negligent. Lunden, 632 P.2d at 1346. In so holding, the court disagreed with the broker's contention that expert testimony was needed to support a finding that his conduct amounted to negligence. Lunden, 632 P.2d at 1347.

The Supreme Court of Arizona similarly held that expert witness testimony was not necessary to establish the reasonableness of a defendant's investigation of information when that defendant supplied incorrect information. St. Joseph's Hosp. v. Reserve Life Ins. (Ariz. 1987), 742 P.2d 808, 816-17. In St. Joseph's, plaintiff, St. Joseph's Hospital, called the defendant insurer to verify a patient's coverage. The insurer verified the coverage but later refused to pay the hospital stating that the patient had

13

given the insurer his incorrect height and weight and was subsequently denied coverage. St. Joseph's, 724 P.2d at 812. The court construed §§ 552 and 229A of the Restatement of Torts, and specifically quoted comment f to § 229A:

> The care and competence that the supplier of information for the guidance of others is required under [rule 229A, Restatement of Torts] to exercise in order that the information given may be correct, must be exercised in the following particulars. <u>If the matter is one that reauires investigation, the supplier of the information must exercise reasonable care and competence to ascertain the facts on which his statement is based.</u> He must exercise the competence reasonably expected of one in his business or professional position in drawing inferences from facts not stated in the information.

St. Joseph's, 742 P.2d at 816. The court agreed that a plaintiff must supply a professional standard of care for inferences from facts not stated in the information but held that the insurer's duty to exercise reasonable care not to misstate existing, ascertainable facts need not be established by expert testimony. St. Joseph's, 742 P.2d at 816.

In the instant case, the Durbins cite to Easton v. Strassburger (Cal. App. 1984), 199 Cal. Rptr. 383, 393, in which the California Court of Appeals also held that expert testimony was not necessary to establish the negligence of the seller's real estate broker. In Easton, the court held that a real estate broker has a duty to conduct a reasonably competent and diligent inspection of property in order to discover defects for the benefit of the buyer. Easton, 199 Cal. Rptr. at 388. In discussing the negligence action against the brokers, the court noted that

> none of the pertinent cases involving allegations of negligence against a real estate broker require expert testimony to establish the standard of care in the real

14

estate industry, or the particular broker's breach of
that standard of care.

<u>Easton</u>, 199 Cal. Rptr. at 392. The court held that expert
testimony was not required to establish the standard of care in the
real estate industry or the appellant's breach of that standard
because the question of negligence was resolvable by common
knowledge and did not turn on facts peculiarly within the knowledge
of professional experts. <u>Easton</u>, 199 Cal. Rptr. at 392-93.

Similarly, in the instant case, the question of whether the
Realtors negligently misrepresented that there was a legal septic
system on the property is a question resolvable by common knowledge
and does not turn on a standard peculiarly within the knowledge of
an expert witness. The Realtors must exercise reasonable care and
competence to ascertain the facts on which their statements were
based because they were aware that the Durbins relied on their work
product in connection with this real estate transaction. This
standard of care does not require expert testimony establishing
accepted practice within the real estate profession. Accordingly,
we hold that expert testimony was not required to establish a duty
and a breach of that duty in the Durbins' negligent
misrepresentation claim.

C. Statutory Claims

The Durbins brought two statutory claims against the Realtors.
The Durbins alleged that the Realtors violated § 37-51-321, MCA, of
the Montana Real Estate Licensing Act and §§ 30-14-103 and 133,
MCA, of the Montana Consumer Protection Act. The Durbins claim
that these statutes set forth the standards the Realtors were

15

required to follow, and thus allow a layperson to determine without expert testimony, whether the Realtors satisfied the requirements of the Acts. The Realtors argue that regardless of the standards set forth in the statutes, the Durbins have the burden, through expert testimony of a licensed real estate broker/agent, to establish the appropriate standard of care and the Realtors' deviation therefrom.

Section 37-51-321, MCA, sets forth the procedures for revocation or suspension of a real estate broker or salesperson's license. Specifically, it allows the Board of Realty Regulation to investigate the actions of a real estate broker or a real estate salesperson and revoke or suspend a license when the broker or salesperson has been found guilty of any of the following practices:

> (a) intentionally misleading, untruthful, or inaccurate advertising . . (b) making any false promises of a character likely to influence, persuade, or induce; (c) pursuing a continued and flagrant course of misrepresentation or making false promises through agents or salespersons or any medium of advertising or otherwise . . .

Additionally, the realty regulations cover grounds for license discipline for acts such as fraud, misrepresentation, or deception. A.R.M. 8.58.419(3) (1993). For example, A.R.M. 8.58.419(3) (1993), provides in part:

> (i) licensees shall endeavor to ascertain all pertinent facts concerning every property in any transaction in which the licensee acts, so that the licensee may fulfill the obligation to avoid error, exaggeration, misrepresentation, or concealment of pertinent facts;
> (ii) licensees who have listed property shall make a prompt, reasonable, visual inspection of any property listed; . . .

16

> (iv) licensees shall disclose to principals and third parties all material facts concerning the property of which the licensee has actual knowledge regarding the property . .

Violation of these regulations may be considered by the Board in determining whether the broker failed to meet the generally accepted standard of practice. A.R.M. 8.58.419(1) (1993).

The Durbins contend that a layperson can determine whether a broker has violated these regulations because the determination requires no specialized knowledge. They further assert that the Board of Realty Regulation eliminated the need for expert standard of care testimony to establish unprofessional conduct within the purview of A.R.M. 8.58.419(1993).

Section 37-51-321, MCA, sets forth grounds for revocation or suspension of a real estate license such as making any false promises of a character likely to influence, persuade, or induce or demonstrating unworthiness or incompetency to act as a broker or salesperson. A.R.M. 8.58.419 (1993), articulates acts or omissions that are evidence of acts against the interest of the public. The statute combined with its implementing regulations sets forth comprehensive guidelines for licensed real estate agents and brokers.

We have held that the provisions of the Real Estate Licensing Act establish a standard of conduct to which brokers and salespersons must conform. "If not, they must bear the consequences." Carnell v. Watson (1978), 176 Mont. 344, 349, 578 P.2d 308, 311. Accordingly, in the instant case, expert testimony

17

was not required because a jury may determine whether the Realtors violated any of the provisions in the regulations or statutes.

The Durbins also brought a claim under the Montana Consumer Protection Act, §§ 30-14-103 and 133, MCA. Section 30-14-103, MCA, states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 30-14-133, MCA, delineates that "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal . . . may bring an individual but not a class action . ."

The Board of Realty Regulations articulates what constitutes an unfair or deceptive act or practice. A.R.M. 8.78.101(1) states that a person engages in unfair or deceptive and therefore unlawful acts or practices when, he or she "makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of merchandise [or] states that a transaction involves rights, remedies or obligations that it does not involve . ."

A determination of whether the Realtors made a representation and whether that representation was false is clearly within the common knowledge of a layperson. In the instant case, scientific, technical, or other specialized knowledge is not necessary to assist the jury to understand the evidence because the statute and the regulations establish the conduct to which the Realtors must conform regardless of whether other brokers conform to that same conduct. Accordingly, we conclude that the Durbins were not

18

required to provide expert standard of care testimony to establish the relevant statutory violations.

2. Should this Court direct the District Court on the admissibility of expert standard of care testimony?

The Durbins argue that not only do the elements of the claims they asserted not require expert testimony but also that expert testimony is not admissible for any of the claims they asserted. Thus the Durbins contend that the Realtors are precluded from offering expert testimony establishing the standard of care exercised by other real estate brokers in similar transactions. They request this Court to remand their case and direct the District Court to exclude at trial any expert standard of care testimony. The Realtors continue to assert that expert testimony establishing the standard of care and a breach of that standard is not only admissible but also required.

We have long held that issues concerning the admissibility of evidence are within the discretion of the trial court. Cottrell v. Burlington Northern R. Co. (1993), 261 Mont. 296, 301, 863 P.2d 381, 384 (citing Cooper v. Rosston (1988), 232 Mont. 186, 190, 756 P.2d 1125, 1127). "The trial court is vested with great latitude in ruling on the admissibility of expert testimony." Cottrell, 863 P.2d at 384; see also Jim's Excavating, 878 P.2d at 257.

The fundamental requirements of Rule 702, M.R.Evid., testimony by experts, still apply. Rule 702, M.R.Evid., provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

19

The Commission Comments to Rule 702, M.R.Evid, note that the rule sets forth two standards. First, the subject matter must be one that requires expert testimony. Expert testimony is required in areas not within the range of ordinary training or intelligence. Newville v. State, Dept. of Family Service (1994), 267 Mont. 237, 257, 883 P.2d 793, 805 (requiring expert testimony establishing standard of care for professional negligence because a jury of laypersons is normally incompetent to pass judgment on standard of care for professionals without the assistance of expert testimony). Second, the particular witness must be qualified as an expert to give an opinion in the particular area of the testimony. Thus, Rule 702, M.R.Evid., implicitly requires a foundation showing that the expert has special training or education and adequate knowledge on which to base an opinion. Cottrell, 863 P.2d at 384. Within the confines of the rule of evidence, a trial court has broad discretion in determining the admissibility of the evidence. Accordingly, we remand this case for trial leaving the District Court with the discretion to determine the admissibility of expert testimony.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

20

Justices