No. 99-394

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 302N

NANCY DRUMM and LAWRENCE DRUMM,

Plaintiffs and Appellants,

v.

DENNIE M. SHELLY and TOM HILL,

Defendants and Respondents.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Scott B. Spencer, Attorney at Law, Libby, Montana

For Respondents:

(No Respondents' Brief filed)

Submitted on Briefs: August 30, 2001
Decided: December 28, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 In this action, Nancy Drumm and Lawrence Drumm sought to rescind a real estate contract with Tom Hill or, in the alternative, to recover damages against Dennie M. Shelly for constructive fraud and under the Montana Consumer Protection Act (Act). The case was tried to a jury in the Nineteenth Judicial District Court, Lincoln County, during which, based on a pretrial stipulation between the Drumms and Hill, the court dismissed the rescission claim. The jury awarded the Drumms $5,000 in damages against Shelly under the Act. The Drumms appeal. We affirm.

¶3 The issues are:

¶4 1. Did the District Court err in dismissing the rescission claim and in dismissing Tom Hill from the lawsuit?

¶5 2. Did the District Court err in instructing the jury on the elements of constructive fraud?

¶6 3. Did the District Court err in answering a jury question on the definition of constructive fraud?

## BACKGROUND

¶7 In the early 1980s, Hill subdivided a 20-acre tract of land in Lincoln County near Troy, Montana. The subdivision is known as Schoolhouse Lake Estates (Estates). The lots in the subdivision are not served by a community well or septic system. Consequently, each lot owner who wants water and septic services must drill his or her own well and install a septic system.

¶8 In 1994, Hill listed the lots in the Estates with Northwest Properties, a real estate agency in Libby, Montana. Shelly is the broker/owner of Northwest Properties. Aware that groundwater was not abundant or was difficult to reach in the area of the Estates, Shelly investigated which owners of lots in the subdivision had reached water and at what depths, and recorded his findings on a hand-drawn map. His map did not show the locations of wells which had been drilled but were dry.

¶9 In June 1995, the Drumms traveled to northwest Montana from their home in Colorado to purchase property and relocate. They consulted Northwest Properties real estate agent Joanne Linehan about the lots for sale at the Estates.

¶10 Linehan accompanied the Drumms to the Estates, where the Drumms inspected several lots, including one--Lot 2--with a capped off (dry) well. At trial, Linehan testified that the dry well was discussed, but the Drumms denied that such a conversation had taken place. In any event, the Drumms had heard rumors of potential water problems in the Estates. When they asked Linehan about the problems, she produced the map Shelly had prepared and either showed it to them or gave them a copy.

¶11 The Drumms made an offer on Lot 8 of the Estates, Hill accepted it and the parties entered into a contract for deed for the Drumms' purchase of the lot. The Drumms built a house on their lot and made two unsuccessful attempts to drill a well. They essentially ran out of funds before they were able to reach an acceptable water supply.

¶12 In this action, the Drumms claim the availability of water on Lot 8 was misrepresented to them when they purchased their property. They also claim Shelly defrauded them and violated the Act by failing to disclose documents in which the Lincoln County Sanitarian had established, at the time the subdivision was created, approved locations for wells and septic tanks on the lots in the Estates. Hill cross-claimed against Shelly, asserting Shelly was liable for any damages awarded against him.

¶13 Just before trial, the Drumms entered into a written stipulation with Hill in which Hill agreed to forego payment of the remaining $5,600 the Drumms owed on the $15,000 purchase price for the lot. In turn, the Drumms agreed not to contest Hill's cross-claim that he was entitled to indemnification from Shelly for any damages awarded against him on their rescission claim.

¶14 At the beginning of trial, Shelly informed the District Court of the Drumm-Hill

stipulation and asked the court to dismiss the Drumms' rescission claim. The court did not act on Shelly's request immediately. After the first day of trial, however, the District Court ruled that the stipulation amounted to a settlement of the claims between the Drumms and Hill. As a result, it dismissed the rescission claim as against both defendants and also dismissed Hill as a defendant.

¶15 On the remaining claims, the jury found that Shelly violated the Act and caused $5,000 in damages to the Drumms, but found that Shelly did not commit constructive fraud. The District Court denied the Drumms' motion for treble damages under the Act, but awarded them $13,476.30 in attorney fees and costs. The Drumms appeal.

## DISCUSSION

¶16 1. Did the District Court err in dismissing the rescission claim and in dismissing Tom Hill from the lawsuit?

¶17 The stipulation between the Drumms and Hill states that neither party wishes to risk an unfavorable outcome regarding the rescission action and that each wishes to resolve the disputes between them as expeditiously as possible. The stipulation then provides that "Drumm and Hill therefore agree to settle their dispute according to the terms of this agreement." Specifically, Hill agreed to cancel the remaining balance on the contract for the land, to withdraw any affirmative defenses to the Drumms' rescission claim, to pay over to the Drumms any sums awarded on the rescission from Shelly and not paid directly by Shelly to the Drumms and to allow the Drumms to keep the property if the jury did not grant rescission. The Drumms agreed to accept the cancellation of the balance owed on the contract, together with any damage award that Hill either received from Shelly through indemnification or which Shelly paid directly to the Drumms, as full liquidated damages for any wrongs committed by Hill. The Drumms further agreed not to contest Hill's claim for indemnification.

¶18 The District Court dismissed the rescission claim based on its legal conclusion that the stipulation between the Drumms and Hill in essence settled the rescission question. Our standard of review of conclusions of law, including whether a claim should be dismissed as a matter of law, is whether the district court was correct. *See Skinner Enterprises, Inc. v. Lewis and Clark City-County Health Dept.*, 1999 MT 106, ¶ 11, 294 Mont. 310, ¶ 11, 980 P.2d 1049, ¶ 11.

¶19 In this case, Shelly did not file a written motion to dismiss the rescission claim and the

District Court did not issue a written decision on the oral motion he made at the beginning of trial. Therefore, the transcript provides the only basis from which we can discern the District Court's rationale in granting the motion. The parties referenced *Cechovic v. Hardin & Assoc.* (1995), 273 Mont. 104, 902 P.2d 520, and *McCarty v. Lincoln Green, Inc.* (1980), 190 Mont. 306, 620 P.2d 1221, in the arguments on the motion. Both cases were cited in relation to Hill's argument that he was entitled to seek attorney fees. That issue is not before us

on appeal.

¶20 On appeal, the Drumms assert "[t]he District Court erroneously dismissed the rescission action on the grounds that the rescission was not prompt." The record provides no support for the notion that lack of promptness regarding rescission was the court's basis for dismissal.

¶21 The Drumms next contend the stipulation left intact all pending claims for rescission or damages and Hill's claim for indemnity from Shelly. In so arguing, the Drumms state "[t]he release of a party to an action from liability does not release from liability any other person who might be responsible for the same damages," relying on § 27-1-704, MCA. The problem with this argument is that the Drumms' rescission claim against Shelly depends on Shelly's status as Hill's agent. Once Hill and the Drumms settled their dispute regarding the real estate contract, no person remained in the action--as alleged in the Drumms' complaint--who might be liable on the Drumms' rescission claim regarding their real estate contract with Hill.

¶22 The Drumms complain the rescission claim was improperly dismissed before they had an opportunity to present their entire case-in-chief. Because the claim was dismissed as a matter of law as a result of their pretrial stipulation, however, it was not necessary that their evidence be heard before the court acted on Shelly's motion.

¶23 As to the dismissal of Tom Hill, once the Drumms stipulated to accept the cancellation of the balance owed, together with any damage award that Hill either received from Shelly through indemnification or which Shelly paid directly to the Drumms, as full liquidated damages for any wrongs committed by Hill, there was no longer any point in Hill remaining as a defendant in their lawsuit, and Hill has not appealed the dismissal of his cross-claim.

¶24 We hold the District Court did not err in dismissing the rescission claim and in dismissing Hill from the lawsuit.

¶25 2. Did the District Court err in instructing the jury on the elements of constructive fraud?

¶26 The District Court instructed the jury:

> In this case the Plaintiffs are alleging constructive fraud. Constructive fraud consists of either:
>
> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person at fault by misleading another to his/her prejudice; or
>
> (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

¶27 The Drumms contend the jury also should have been instructed what acts the law declares to be fraudulent. Their contention relates specifically to their evidence concerning the documents in which the Lincoln County Sanitarian established approved locations for wells and drainfields on the lots in the Estates. The Drumms contend the jury should have been instructed that Shelly's failure to disclose these restrictions to them is a fraudulent act.

¶28 In their proposed instruction on constructive fraud, the Drumms included language stating that the failure of a real estate agent to disclose a material fact or to disclose documents required by law to be disclosed is fraudulent. The court excluded that language from its constructive fraud instruction. In doing so, the court apparently relied on this Court's statement in *Durbin v. Ross* (1996), 276 Mont. 463, 476, 916 P.2d 758, 766, that whether a real estate broker made a representation and that representation was false is clearly within common knowledge of laypersons and does not require expert testimony.

¶29 The standard of review for a district court's refusal to give a jury instruction is whether the district court abused its discretion. *See Harwood v. Glacier Elec. Co-op., Inc.* (1997), 285 Mont. 481, 487, 949 P.2d 651, 655 (citation omitted). The Drumms cite no authority under which their proposed language is included in a jury instruction on constructive fraud, and the instruction that was given mirrors the definition of constructive

fraud in § 28-2-406, MCA. We conclude the District Court did not abuse its discretion in excluding the disputed specific language from the general definition of constructive fraud given to the jury.

¶30 3. Did the District Court err in answering a jury question on the definition of constructive fraud?

¶31 During its deliberations, the jury sent out a note asking the court for a better definition of constructive fraud than that provided in the instructions. The court responded as follows:

Dear Jury:

The definition of constructive fraud as set forth in Instruction No. 12 is taken directly from the Montana statutes. It might be helpful for you to understand that paragraph (2) doesn't really apply to this particular case, so you should focus on paragraph (1). Aside from that, I can not give you any additional guidance.

(signed)

DISTRICT JUDGE

¶32 On appeal, the Drumms contend paragraph (2) of Instruction No. 12 "was a definition that specifically covered the factual situation before the court." They assert the court committed reversible error in instructing the jury to disregard a portion of the applicable law.

¶33 Again, our standard of review for a district court's refusal to give jury instructions is whether the district court abused its discretion. *See Harwood*, 285 Mont. at 487, 949 P.2d at 655. The Drumms did not allege that Shelly committed any act or omission which the law specifically declares to be fraudulent. Rather, they alleged that his failure to disclose water problems and the sanitation restrictions misled them to their prejudice. We conclude the District Court did not abuse its discretion in instructing the jury, in response to the inquiry, to disregard the portion of the definition of constructive fraud which was not applicable to this case.

¶34 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM RICE